# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 8, 2005         Decided August 9, 2005

No. 04-5045

INITIATIVE AND REFERENDUM INSTITUTE, ET AL.,
APPELLANTS

v.

UNITED STATES POSTAL SERVICE,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 00cv01246)

---

*David F. Klein* argued the cause for appellants. With him on the briefs were *John R. Ferguson* and *Arthur B. Spitzer*.

*Marina Utgoff Braswell*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *Michael J. Ryan*, Assistant U.S. Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: GINSBURG, *Chief Judge*, and HENDERSON and GARLAND, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: A United States Postal Service regulation bans "soliciting signatures on petitions, polls, or surveys" on "all real property under the charge and control of the Postal Service." The district court rejected the plaintiffs' First Amendment challenge to this regulation, concluding that even if all exterior postal properties are public forums, the regulation is a valid restriction on the time, place, or manner of speech. For the reasons set forth below, we reverse the judgment of the district court and remand the case for further proceedings.

I

The appellants are seven individuals and organizations that attempt to place initiatives on state ballots by collecting signatures on petitions. They contend that sidewalks and other exterior areas of post offices are particularly fertile locations for the procurement of such signatures.[1] Until relatively recently, Postal Service regulations were silent on the subject of soliciting petition signatures on postal premises, while a 1992 postal bulletin expressly permitted "issue-oriented petitioning [and] campaigning for a referendum or ballot initiative." *See* POSTAL BULLETIN 21814 (Apr. 30, 1992). In 1998, however, the Postal Service amended its regulation governing "[c]onduct on postal property" to ban that activity. 39 C.F.R. § 232.1. The regulation now provides as follows, with the relevant change italicized:

> Soliciting alms and contributions, campaigning for election to any public office, collecting private debts, soliciting and vending for commercial purposes . . . ,

---

[1]The appellants do not claim a right to collect signatures inside post offices, an activity that is also constrained by regulation. *See* 39 C.F.R. § 232.1(a), (h)(1).

> displaying or distributing commercial advertising, *soliciting signatures on petitions, polls, or surveys (except as otherwise authorized by Postal Service regulations)*, and impeding ingress to or egress from post offices are prohibited.

39 C.F.R. § 232.1(h)(1) (emphasis added). Section 232.1 applies "to all real property under the charge and control of the Postal Service." *Id.* § 232.1(a). The regulation stipulates that it must be posted "at a conspicuous place on all such property," *id.*, and subjects violators to criminal penalties, including fines and imprisonment. *See id.* § 232.1(p).

In 2000, the appellants brought suit against the Postal Service in the United States District Court for the District of Columbia, contending that § 232.1(h)(1) violates the First Amendment. They argued that the regulation is unconstitutional on its face and as applied to their specific petitioning activities. Both sides moved for summary judgment.

The district court initially denied the motions, on the ground that there were insufficient facts in the record to entitle either party to judgment as a matter of law. *See Initiative & Referendum Inst. v. U.S. Postal Serv.*, 116 F. Supp. 2d 65, 67 (D.D.C. 2000). The court recognized that the scope of the plaintiffs' First Amendment rights depends upon whether the property at issue is "defined as a traditional public forum, a designated public forum, or a nonpublic forum." *Id.* at 69. That determination, the court said, "turns on an analysis of the specific nature and characteristics of the actual property in question." *Id.* at 71. The court added that, in order to hold the regulation unconstitutional on its face, it "would have to decide whether all post office exterior property should be deemed a traditional public forum, a designated public forum or a nonpublic forum." *Id.* at 73. Lacking sufficient "facts about all

actual post offices," the court concluded that it could not determine whether the regulation was "unconstitutional on its face or [even] as applied." *Id.*

The court did, however, find some issues resolvable on the record before it. First, it decided that § 232.1(h)(1) was content neutral "because it was not adopted based on a disagreement with the content of speech." *Id.* at 74. Second, the court stated that it did not need to further investigate whether any postal property was a designated public forum, because designated public forums may be closed by viewpoint- and content-neutral regulations. *Id.* Finally, the court decided that § 232.1(h)(1) "would withstand the minimal level of scrutiny applicable to regulations in a nonpublic forum." *Id.* at 75.

Following the district court's decision, the appellants filed an amended complaint identifying twelve postal properties on which they had sought "and in the future would seek to gather signatures on petitions." First Am. Compl. ¶ 52, at 14. The parties then engaged in discovery, and eventually cross-moved for summary judgment again. At a hearing on those motions, the Postal Service "announced . . . in open court that it ha[d] changed its articulated position from the one it took early in this litigation to one more favorable to plaintiffs on whether certain alternative channels of communication on exterior postal properties would violate 39 C.F.R. § 232.1." *Initiative & Referendum Inst. v. U.S. Postal Serv.*, No. 00-1246, Order at 1 (D.D.C. Sept. 26, 2002) ("Sept. 2002 Order"). The change in position was twofold. The Postal Service said that: (1) it would not apply § 232.1(h)(1) to public perimeter sidewalks that are indistinguishable from their non-postal counterparts; and (2) where the regulation's ban on soliciting signatures remained applicable, it would limit the ban to the actual collection of signatures on postal property and not apply it where a petitioner merely asks people to sign at off-premises locations. *See*

Motions Hr'g Tr. at 29, 32-34 (Sept. 24, 2002). The Postal Service "also expressed willingness to issue a bulletin to its postmasters directing them to adhere to this changed position." Sept. 2002 Order at 1. The district court directed the Postal Service to submit the text of such a proposed bulletin, and said that it "would be relying on that changed position in deciding upon the pending summary judgment motions." *Id.*

Thereafter, the Postal Service submitted a proposed bulletin, styled as a reminder to postmasters about their obligations in enforcing § 232.1(h)(1)'s regulation of "activities in support of ballot initiatives and public referenda." Def.'s Notice of Filing of Proposed U.S. Postal Service Postal Bulletin, Ex. 1. The postal bulletin in its published form -- which largely resembles the version submitted to the district court -- states that § 232.1(h)(1) does

> not apply to municipal or other public perimeter sidewalks, even if the Postal Service's property line extends onto such a sidewalk . . . . The beginning of Postal Service-controlled space must be easily distinguishable to members of the public by means of some physical feature. For example, a Postal Service sidewalk that is perpendicular to the city sidewalk would indicate to members of the public that they are entering onto Postal Service property, as would stairs leading up to the entrance of a Post Office.

POSTAL BULLETIN 22119, at 19 (Jan. 8, 2004). The bulletin further confines the regulation's application

> to efforts to have members of the public provide signatures on Postal Service premises, and not to communications that promote the signing of petitions, polls, and surveys somewhere other than on Postal

> S[e]rvice premises. . . . Thus, if a petition circulator wishes to collect signatures for a petition, poll, or survey, he or she would not be prohibited from standing on exterior parts of Postal Service property that are open to the public and passing out informational leaflets, holding up a sign, or both. The leaflet or sign could provide relevant information about the petition, poll, or survey, and direct Postal Service customers to nearby non-Postal Service property, that is, property not under the Postal Service's charge and control, where they can sign the petition, poll, or survey, if they so desire.

*Id.*

On December 31, 2003, the district court granted the Postal Service's motion for summary judgment. The court stated that it could not hold § 232.1(h)(1) unconstitutional on its face unless the regulation was unconstitutional as to each of the approximately 34,000 postal installations in the country. *Initiative & Referendum Inst. v. U.S. Postal Serv.*, 297 F. Supp. 2d 143, 148 (D.D.C. 2003). Because "proper forum analysis require[s] an examination of aspects of each of those properties," and because the record still lacked information "that would be essential to support an injunction applicable to all such locations," the court concluded that the only way it could declare the regulation facially unconstitutional was if "all exterior post office properties [were] traditional public for[ums]" and the regulation failed to pass constitutional muster under the exacting scrutiny that applies to such forums. *Id*. Assuming for purposes of analysis that all the exterior properties were public forums, the court found that § 232.1(h)(1) was a valid time, place, or manner restriction because "this content-neutral regulation promotes a significant government interest

and will leave open ample alternative channels of communication." *Id.* at 147. This appeal followed.

## II

The First Amendment to the Constitution provides that "Congress shall make no law . . . abridging the freedom of speech, . . . or the right of the people . . . to petition the Government for a redress of grievances." There is no question that "the solicitation of signatures for a petition involves protected speech." *Meyer v. Grant*, 486 U.S. 414, 422 n.5 (1988). Indeed, this kind of speech "is at the core of our electoral process and of the First Amendment freedoms -- an area of public policy where protection of robust discussion is at its zenith." *Id.* at 425 (citation and internal quotation marks omitted).

The fact that petitioning constitutes protected speech, however, "merely begins [the] inquiry." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799 (1985). The Supreme Court "has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Id.* at 800. Under that analysis, "the extent to which the Government can control access depends on the nature of the relevant forum." *Id.*

Three forum categories have emerged. The first is referred to as the "traditional" public forum. The analysis applicable to this category is as follows:

> "[P]ublic places" historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to

be "public forums." In such places, the government's ability to permissibly restrict expressive conduct is very limited: the government may enforce reasonable time, place, and manner regulations as long as the restrictions "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." Additional restrictions such as an absolute prohibition on a particular type of expression will be upheld only if narrowly drawn to accomplish a compelling governmental interest.

*United States v. Grace*, 461 U.S. 171, 177 (1983) (citations omitted) (quoting *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). The second category is the "designated" public forum, "public property which the state has opened for use by the public as a place for expressive activity." *Perry Education Ass'n*, 460 U.S. at 45. Restrictions on expression in such forums are evaluated under the same standard as that applicable to traditional public forums. *Id.* at 46. Finally, on government property that is not a public forum, "the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.*; *see generally Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 573 (1987).

In considering the appellants' facial challenge to the Postal Service regulation, the district court made three key determinations. First, it held that even if all postal properties were public forums, the ban on soliciting signatures contained in § 232.1(h)(1) would survive as a reasonable regulation of the time, place, or manner of protected expression. In Part III, we explain why in fact the ban fails scrutiny as a time, place, or

manner restriction in public forums. In Part IV.B, we explain why one aspect of the ban is invalid (in the absence of a limiting construction) even for postal properties that are not public forums.

The court's second key determination was that the appellants' facial challenge could succeed only by showing that the regulation was unconstitutional in all of its applications. For the reasons discussed in Part IV.A, we also disagree with that determination.

Finally, the district court decided to conduct its inquiry as though § 232.1(h)(1) had been modified by the then-draft postal bulletin. For the reasons discussed in Part V, the bulletin (subsequently issued as Postal Bulletin 22119) can play that role only in part. We therefore initially analyze the constitutionality of the regulation as it was published in the Federal Register and codified in the Code of Federal Regulations.

### III

The facial constitutionality of § 232.1(h)(1) depends in large part on whether the postal properties at issue are public forums. But we need not resolve the forum status of these properties if the regulation would be a permissible restriction on speech even in such forums. We therefore first ask (as the district court did) whether § 232.1(h)(1) can be constitutionally applied to public forums.

As noted above, "the government may enforce reasonable time, place, and manner regulations" restricting expression in a public forum "as long as the restrictions 'are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" *Grace*, 461 U.S. at 177 (citations omitted) (quoting *Perry*

*Education Ass'n*, 460 U.S. at 45). Although we conclude that § 232.1(h)(1) is content neutral and serves a significant government interest, we find that it is not narrowly tailored and does not preserve ample alternative channels of communication.

A

The Postal Service has advanced a significant, content-neutral interest in support of its ban on the solicitation of signatures on petitions. In explaining its rationale for amending § 232.1(h)(1), the Postal Service stated that it wanted "to minimize the disruption of postal business and to provide unimpeded ingress and egress of customers and employees to and from post offices." 62 Fed. Reg. 61,481, 61,481 (Nov. 18, 1997). The Supreme Court has repeatedly found this kind of government interest sufficient to satisfy the significance and content-neutrality elements of the time, place, or manner test.[2]

But while the government's interest is sufficient, § 232.1(h)(1) is not narrowly tailored to effectuate it. To be narrowly tailored, a regulation "need not be the least restrictive or least intrusive means" of serving the government's interests.

---

[2] *See Grace*, 461 U.S. at 181-82 & n.10 (ban on picketing and leafleting on the Supreme Court's sidewalks "to protect persons and property" and "to maintain proper order and decorum"); *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 648-50 (1981) (ban on selling and distributing materials outside fixed locations on state fairgrounds to "maintain the orderly movement of the crowd"); *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 805-06 (1984) (ban on posting signs on public property to "eliminat[e] clutter and visual blight"); *see also Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) ("Government regulation of expressive activity is content neutral so long as it is *justified* without reference to the content of the regulated speech." (internal quotation marks omitted) (emphasis added)).

*Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989). Nonetheless, it must not "burden substantially more speech than is necessary to further the government's legitimate interests." *Id*. at 799. A "statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy. A complete ban can be narrowly tailored, but only if each activity within the proscription's scope is an appropriately targeted evil." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988).

The Postal Service "does not suggest that all signature-gatherers engage in harassment of postal customers." Appellee's Br. at 46. It contends only "that the *potential* exists and, in fact, *occasionally* does occur." *Id.* (emphasis added). As the government explained in its memorandum to the district court, the Postal Service argues that the "restrictions target precisely the conduct that impinges on the significant government interests sought to be advanced, *i.e.*, signature-gathering activities that interfere with customer satisfaction by being, *at times*, disruptive, that *occasionally* give the appearance of bias or partiality on the part of [the Postal Service], and that *at times* require postal employees to spend too much of their time on nonpostal business." Def.'s Stmt. Mat. Facts at 36 (emphasis added). "There is no evidence," the government insists, that the "regulation restricting signature-gathering activities on exterior postal property does not serve these legitimate interests." *Id.*

We agree that the regulation serves the government's legitimate interests. But it surely does not, in the government's words, "target" those interests "precisely." To the contrary, since the problems the government identifies arise only "occasionally" and "at times," the across-the-board ban on signature solicitation necessarily bars much solicitation that is not disruptive, does not give the appearance of partiality on the part of the Postal Service, and does not require excessive postal

worker time. Thus, a "substantial portion of the burden on speech does not serve to advance" the government's content-neutral goals. *American Library Ass'n v. Reno*, 33 F.3d 78, 88 (D.C. Cir. 1994) (internal quotation marks omitted).

This lack of narrow tailoring was precisely the problem that led the Supreme Court, in *United States v. Grace*, to rule unconstitutional a statutory ban on the display of flags or banners on the sidewalk in front of the Court's own building. As the Court said:

> We do not denigrate the necessity to protect persons and property or to maintain proper order and decorum within the Supreme Court grounds, but we do question whether a total ban on carrying a flag, banner or device on the public sidewalks substantially serves these purposes. There is no suggestion, for example, that appellees' activities [one appellee had distributed leaflets; the other had displayed a sign with the text of the First Amendment] in any way obstructed the sidewalks or access to the Building . . . or in any way interfered with the orderly administration . . . of the grounds.

*Grace*, 461 U.S. at 182. Similarly, in *Ward v. Rock Against Racism*, the Court explained why a total prohibition of handbilling would be unconstitutional:

> A ban on handbilling, of course, would suppress a great quantity of speech that does not cause the evils that it seeks to eliminate, whether they be fraud, crime, litter, traffic congestion, or noise. For that reason, a complete ban on handbilling would be substantially broader than necessary to achieve the interests justifying it.

13

*Rock Against Racism*, 491 U.S. at 799 n.7 (citation omitted). Section 232.1(h)(1)'s absolute prohibition against soliciting signatures on petitions anywhere on postal property suffers from the same flaw these cases describe.[3]

Further evidence that § 232.1(h)(1) prohibits substantially more speech than is necessary to achieve its aims is the fact that the Postal Service already accomplishes those purposes through myriad other means that do not involve an outright ban on the solicitation of signatures. Such means include separate bans, in the same regulation, against disturbing postal patrons and

---

[3]This court has found the same problem in other government efforts to restrict speech in public forums. In *Community for Creative Non-Violence v. Turner*, for example, we held invalid a regulation, promulgated by the Washington Metropolitan Area Transit Authority (WMATA), that required permits for organized free speech activities at above-ground areas of WMATA stations. The requirement was not narrowly tailored, we said, because "[w]hile the Regulation arguably eliminates the 'sources of evil' that allegedly threaten WMATA's ability to provide a safe and efficient transportation system, it does so at too high a cost, namely, by significantly restricting a substantial quantity of speech that does not impede WMATA's permissible goals." 893 F.2d 1387, 1392 (D.C. Cir. 1990). Likewise, in *Lederman v. United States*, we declared unconstitutional a ban on demonstrations on the sidewalk on the U.S. Capitol's East Front. 291 F.3d 36, 39 (D.C. Cir. 2002). Although we recognized that the ban accomplished the legitimate purpose of reducing pedestrian traffic and decreasing security risks, we concluded that "[s]ome banned activities," such as "a single leafleteer standing on the East Front sidewalk," were "no more likely [to] block traffic or threaten security" than were ordinary pedestrians. *Id.* at 45. "[T]he Constitution does not tolerate," we said, "regulations that, while serving their purported aims, prohibit a wide range of activities that do not interfere with the Government's objectives." *Id.* at 44 (quoting *Community for Creative Non-Violence v. Kerrigan*, 865 F.2d 382, 390 (D.C. Cir. 1989)).

employees and against impeding entry.[4]   Of course, the availability of other means of accomplishing a governmental objective does not foreclose the government's ability to pursue its chosen course.  But it is probative of whether the government is burdening substantially more speech than is necessary to accomplish that objective.  A petition circulator who reduces a passerby "to tears" or otherwise harasses or impedes postal patrons -- concerns invoked by the Postal Service in support of the regulation, *see* Appellee's Br. at 45 -- can readily be dealt with under those other provisions.

Both the Supreme Court and this court have considered the availability of other means when evaluating a restriction's tailoring.  In *Members of City Council v. Taxpayers for Vincent*, the Court noted that "ordinances that absolutely prohibit[] handbilling on the streets [are] invalid" because cities can "adequately protect the esthetic interest in avoiding litter without abridging protected expression merely by penalizing

---

[4]*See* 39 C.F.R. § 232.1(e) ("Disorderly conduct, or conduct . . . which obstructs the usual use of entrances, foyers, corridors, offices, elevators, stairways, and parking lots, or which otherwise tends to impede or disturb the public employees in the performance of their duties, or which otherwise impedes or disturbs the general public in transacting business or obtaining the services provided on property, is prohibited."); *id.* § 232.1(h)(1) ("[I]mpeding ingress to or egress from post offices [is] prohibited."); *id.* § 232.1(k)(4) ("The blocking of entrances, driveways, walks, loading platforms, or fire hydrants in or on property is prohibited."); *see also* POSTAL BULLETIN 22119, at 19 (noting that the activities of petition circulators "are still subject to other provisions in the regulations pertaining to all parts of Postal Service property, such as those prohibiting disturbances, soliciting contributions or collecting private debts, campaigning for public office, vending, commercial advertising, impeding ingress and egress, depositing or posting literature, and setting up tables, stands, or other structures").

those who actually litter." 466 U.S. 789, 808-09 (1984); *see City of Ladue v. Gilleo*, 512 U.S. 43, 58-59 (1994) (noting that the defendant city could adopt "more temperate measures" than a near-total ban on residential signs that "could in large part satisfy [the city's] regulatory needs without harm to the First Amendment rights of its citizens"). And in *Lederman v. United States*, we held that "[p]erhaps the most troubling aspect" of the ban against "demonstration activity" on the sidewalk on the East Front of the U.S. Capitol was "the ready availability of substantially less restrictive alternatives that would equally effective[ly] promote safety and orderly traffic flow," such as "existing laws" that bar disruptive conduct and obstructing passage, and the possibility of requiring advance permits for demonstrations. 291 F.3d 36, 45-46 (D.C. Cir. 2002) (internal quotation marks omitted).

Finally, the Postal Service disputes the suggestion that prohibitions targeted at disturbances and impediments fully accomplish its purposes, since "people who come to post offices to engage in postal business may well be irritated by even the nicest circulator, however brief the interruption may be, because they are being interrupted in what they set out to do, questioned about something plainly personal . . . , and asked to think about an issue that presumably was not on their minds when they set out to engage in postal business." Appellee's Br. at 46-47. But the "ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is . . . dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209-10 (1975) (quoting *Cohen v. California*, 403 U.S. 15, 21 (1971)). "Speech is often provocative and challenging. . . . That is why [it is] . . . protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest."

*Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949). There is simply no reasonable argument that either an invasion of the "substantial privacy interests" of postal patrons, or a "clear and present danger of a serious substantive evil," lurks in the importuning of postal patrons on public sidewalks.

B

Section 232.1(h)(1) also fails a second element of the time, place, or manner test: it does not leave open ample alternative channels of communication. Rather, the plain language of § 232.1(h)(1) completely denies petition circulators the ability to seek support for their petitioning efforts anywhere on postal premises.

The Postal Service contends that it nonetheless satisfies this element because the appellants "may seek to gather signatures on their initiatives and referenda in numerous other places on non-postal property." Appellee's Br. at 52. We put to one side the fact that the Service has not shown that there are such other places anywhere near postal property,[5] because it is in any event not enough that petitioners may solicit signatures at other locations. The Supreme Court has stressed the importance of providing access "within the forum in question." *Heffron v. International Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 655 (1981). "[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it

---

[5]*See Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984) (noting that "it is common to place the burden upon the Government to justify impingements on First Amendment interests"); *United States v. Doe*, 968 F.2d 86, 87 (D.C. Cir. 1992) (holding that the government has the "burden of showing that [a] regulation is 'narrowly tailored' to further the government's interest . . . in . . . an acknowledged public forum").

may be exercised in some other place." *Reno v. ACLU*, 521 U.S. 844, 880 (1997) (quoting *Schneider v. New Jersey*, 308 U.S. 147, 163 (1939)).

Indeed, the United States made the same argument, to no avail, in *Grace*. There, the government asserted that "the inquiry should not be confined to the Supreme Court grounds but should focus on 'the vicinity of the Supreme Court' or 'the public places of Washington D.C.'" *Grace*, 461 U.S. at 180. "Viewed in this light," the government contended, there were "sufficient alternative areas within the relevant forum, such as the streets around the Court or the sidewalks across those streets[,] to permit [the statute] to be considered a reasonable 'place' restriction." *Id.* The Court rejected the argument, holding that the statutory ban on displaying flags or banners on the Supreme Court's perimeter sidewalk was unconstitutional. *See id.* at 181. In *Community for Creative Non-Violence v. Turner*, this court likewise held that a Washington Metropolitan Area Transit Authority (WMATA) regulation, which required permits for organized free speech activities at Metro stations, failed the ample alternatives prong because there were "no WMATA areas not covered by the permit requirement" and hence "no intra-forum alternative[s]." 893 F.2d 1387, 1393 (D.C. Cir. 1990).[6]

---

[6]*See Rock Against Racism*, 491 U.S. at 802 (finding that New York City's sound-amplification guideline for use of the Central Park bandshell left open ample alternatives because it "continue[d] to permit expressive activity *in the bandshell*" (emphasis added)); *cf. International Soc'y for Krishna Consciousness v. Lee* [*ISKCON v. Lee*], 505 U.S. 672, 684-85 (1992) (upholding a ban on soliciting contributions inside nonpublic-forum airport terminals, in part because solicitation was permitted on exterior terminal sidewalks and thus "the resulting access of those who would solicit the general public [was] quite complete").

The Postal Service also maintains that its total ban on signature solicitation is saved by the fact that other forms of communication, including leafleting and talking about the issue raised by the petition, may take place on postal property. But in *Grace*, the statutory prohibition on the display of a "flag, banner, or device" was not saved by the fact that the statute did "not prohibit *all* expressive conduct." 461 U.S. at 181 n.10. Instead, the Court emphasized that exacting scrutiny should be applied to an "absolute prohibition on a *particular type* of expression." *Id.* at 177 (emphasis added); *see id.* at 181 (noting that the statute "totally bans *the specific communicative activity* on the public sidewalks around the Court grounds" (emphasis added)). Similarly, in *City of Ladue*, the Court rejected a city's claim that its ban against signs on residential property satisfied the time, place, or manner test because residents "remain[ed] free to convey their desired messages by other means, such as *hand-held* signs, letters, [and] handbills." *City of Ladue*, 512 U.S. at 56 (internal quotation marks omitted). The Court noted that expression via residential signs is a "means of communication that is both unique and important," *id.* at 54, and that its "prior decisions have voiced particular concern with laws that foreclose an entire medium of expression." *Id.* at 55.[7]

Moreover, although in the context of bans on soliciting funds it is possible to separate the protected speech involved in the solicitation from the related conduct of actually collecting funds,[8] "the circulation of a petition involves the type of

[7]*See Frisby*, 487 U.S. at 486 (recognizing that certain "means of communication" -- including handbilling, solicitation, and marching -- may "not be completely banned" in residential areas).

[8]*See Friends of the Vietnam Veterans Memorial v. Kennedy*, 116 F.3d 495, 497 (D.C. Cir. 1997) ("The cases protecting the right to solicit contributions in a public forum do so not because the First

*interactive* communication concerning political change that is appropriately described as 'core political speech.'" *Meyer*, 486 U.S. at 421-22 (emphasis added). That interactive communication comprises both the request for the signature and the signature itself, because the circulation of an initiative petition not only involves the "expression of a desire for political change," *id.* at 421, but also is a means of "plac[ing] the matter on the ballot, [and thus making] the matter the focus of statewide discussion," *id.* at 423. Indeed, the circulation of a petition involves an element of speech beyond leafleting or sign-holding, because the collection of signatures -- particularly for an initiative or referendum ballot -- is essential to accomplishing the circulator's purpose.

The Supreme Court has held that restrictions on petition circulation can impermissibly impede protected speech even if they do not ban signature collection outright. In *Meyer v. Grant*, the Court struck down a state law regulating the initiative process that made it a felony to pay petition circulators. *Id.* at 416. As the Postal Service does here, the state argued there that, "even if the statute imposes some limitation on First Amendment expression, the burden is permissible because other avenues of expression remain open to" the plaintiffs. *Id.* at 424. Rejecting this argument, the Court held:

---

Amendment contemplates the right to raise money, but rather because the act of solicitation contains a communicative element."); *see also ISKCON v. Lee*, 505 U.S. at 704-05 (Kennedy, J., concurring in the judgments) (stating that, although a ban on "all speech that requested the contribution of funds" would be unconstitutional, a prohibition that reached "only personal solicitations for immediate payment of money" was permissible because it was "directed only at the physical exchange of money, which is an element of conduct interwoven with otherwise expressive solicitation").

> That appellees remain free to employ other means to disseminate their ideas does not take their speech through petition circulators outside the bounds of First Amendment protection. [The] prohibition of paid petition circulators restricts access to the most effective, fundamental, and perhaps economical avenue of political discourse, direct one-on-one communication. That it leaves open "more burdensome" avenues of communication, does not relieve its burden on First Amendment expression.

*Id.* Like the state law in *Meyer*, the Postal Service's prohibition of signature solicitation "limits the size of the audience" the appellants can reach and "makes it less likely that [they] will garner the number of signatures necessary to place the matter on the ballot." *Id.* at 423. Section 232.1(h)(1) thus "trenches upon an area in which the importance of First Amendment protections is 'at its zenith,'" *id.* at 425, and we "are not persuaded that adequate substitutes exist for the important medium of speech" that the Postal Service has closed off. *City of Ladue*, 512 U.S. at 56.

In sum, the Postal Service's ban on soliciting signatures neither is narrowly tailored nor ensures ample alternative channels of communication. It therefore cannot be upheld as a time, place, or manner restriction of speech if applied in a public forum.

IV

The conclusion that § 232.1(h)(1) fails scrutiny if exterior postal property constitutes a public forum does not alone resolve the appellants' facial challenge. That is not, however, because the appellants must prove that *all* applications of the regulation are unconstitutional in order to succeed on a facial challenge.

To the contrary, there "are two quite different ways in which a statute or ordinance may be considered invalid 'on its face' -- either because it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.'" *Taxpayers for Vincent*, 466 U.S. at 796. Although the "every application" formulation is the general rule, the latter is the rule for facial challenges brought under the First Amendment. "The showing that a law punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep, suffices to invalidate *all* enforcement of that law." *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (citation and internal quotation marks omitted); *see Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244, 256 (2002). As the Supreme Court has explained, it "provided this expansive remedy out of concern that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech -- especially when the overbroad statute imposes criminal sanctions." *Id*. at 119.

A

Given our conclusion that § 232.1(h)(1) is unconstitutional when applied to a public forum, one way in which the regulation would be overbroad is if a substantial number of exterior postal properties constitute public forums. If they do, the regulation creates an unacceptably high risk of chilling constitutionally protected solicitation on such properties. *See Hicks*, 539 U.S. at 119; *Reno v. ACLU*, 521 U.S. at 872.

Certain kinds of postal sidewalks present hard questions regarding their forum status. In *United States v. Kokinda*, four Justices concluded that a particular postal sidewalk -- one "constructed solely to provide for the passage of individuals engaged in postal business" and that "le[d] only from the

parking area to the front door of the post office" -- was not a public forum. 497 U.S. 720, 727 (1990) (O'Connor, J., announcing the judgment of the Court and joined by three Justices). Those four also concluded that a ban on "soliciting alms and contributions" (a separate clause of the same regulation at issue here) was "reasonable as applied" to that sidewalk. *Id.* at 737. Four other Justices, however, found that "the sidewalk in question" was a public forum, and that the restriction was not a permissible time, place, or manner restriction. *Id.* at 740 (Brennan, J., joined by three Justices, dissenting). Justice Kennedy, writing separately, agreed there was a "powerful argument" that "this postal sidewalk . . . is more than a nonpublic forum," *id.* at 737 (Kennedy, J., concurring in the judgment), but concluded that it was unnecessary to decide the question because even if the sidewalk was a public forum, "the postal regulation me[t] the traditional standards we have applied to time, place, and manner restrictions of protected expression." *Id.* at 738. As the district court noted and the Postal Service agrees, the split nature of the decision in *Kokinda* "provides no definitive guidance" on the forum status of postal sidewalks. Appellee's Br. at 17 (quoting *Initiative & Referendum Institute*, 116 F. Supp. 2d at 70).

But while a sidewalk like that in *Kokinda* may be hard to categorize, the Supreme Court has made categorization of another kind of sidewalk straightforward. In *Grace*, the Court held that it could "discern no reason why" the "sidewalks comprising the outer boundaries of the Court grounds" -- sidewalks that are "indistinguishable from any other sidewalks in Washington, D.C." -- should not be treated as traditional public forums. 461 U.S. at 179. The Court explained:

> Sidewalks, of course, are among those areas of public property that traditionally have been held open to the public for expressive activities and are clearly within

> those areas of public property that may be considered, generally without further inquiry, to be public forum property. . . . There is no separation, no fence, and no indication whatever to persons stepping from the street to the curb and sidewalks that serve as the perimeter of the Court grounds that they have entered some special type of enclave. . . . Traditional public forum property . . . will not lose its historically recognized character for the reason that it abuts government property that has been dedicated to a use other than as a forum for public expression.

*Id*. at 179-80. Given that the "public sidewalks forming the perimeter of the Supreme Court grounds" are public forums, *id.* at 180, there can be no doubt that similar sidewalks abutting post offices qualify as well. "The mere fact that a sidewalk abuts property dedicated to purposes other than free speech is not enough to strip it of public forum status." *Henderson v. Lujan*, 964 F.2d 1179, 1182 (D.C. Cir. 1992); *see id.* (holding that two sidewalks within the area designated as the Vietnam Veterans Memorial, "indistinguishable from ordinary sidewalks used for the full gamut of urban walking," constitute public forums); *Lederman*, 291 F.3d at 44 (holding that the sidewalk on the East Front of the Capitol, at the foot of the Capitol steps, is a public forum).

It is uncontested that some postal properties contain what we will hereinafter refer to as *Grace* sidewalks. For example, on the list of twelve postal facilities assembled by the appellants in support of their as-applied challenge is the Georgetown Post Office in Washington, D.C., which directly abuts a sidewalk that is indistinguishable from the municipal sidewalk. *See* Appellants' Br. at 55. At oral argument, the Postal Service conceded that this sidewalk, which the Postal Service owns, constitutes a *Grace* sidewalk and hence a public forum. *See*

Oral Arg. Tape at 37:43-39:18. The appellants contend that their evidentiary "exhibits show[] that the pedestrian sidewalks" at the other urban post offices on the list also are "indistinguishable from the types of public sidewalks that courts have always described as 'quintessential public forums.'" Appellants' Br. at 54. The Postal Service does not deny this contention.

Not all post offices, of course, have *Grace* sidewalks. Although it seems likely that many urban post offices do, and that the regulation's restraint on protected speech is thus substantial, the district court did not consider the question because it wrongly believed that a facial challenge requires proof that *all* exterior postal properties constitute public forums. *See Initiative & Referendum Inst.*, 297 F. Supp. 2d at 148. Accordingly, on remand the district court will have to determine whether the Postal Service's regulation "abridges protected speech . . . in a good number of cases." *Ruggiero v. FCC*, 317 F.3d 239, 248 (D.C. Cir. 2003) (Randolph, J., concurring).

B

But § 232.1(h)(1) has another facial flaw, apart from its application to *Grace* sidewalks. On its face, the regulation appears to bar pure solicitation -- in the sense of *asking* postal patrons to sign petitions -- even if the signatures themselves are to be collected off postal premises. *See* 39 C.F.R. § 232.1(h)(1) ("[S]oliciting signatures on petitions, polls, or surveys . . . [is] prohibited."). The ordinary meaning of "solicit" is merely to request, without reference to whether an immediate response is expected. *See* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1118 (10th ed. 1996) (defining "solicit" as to "entreat" or "approach with a request or plea"); BLACK'S LAW DICTIONARY 1427 (8th ed. 2004) (defining "solicitation" as the "act or an instance of requesting or seeking to obtain something; a request

or petition"). In criminal law, "solicitation" is regarded as a freestanding offense: requesting the unlawful act is itself a crime, regardless of whether the request is consummated. *See id.*[9] Indeed, the district court described the more limited prohibition contained in the draft postal bulletin -- which only barred on-site *collection* of signatures -- as a "change" in the Postal Service's own previously "articulated position" regarding the meaning of the regulation. Sept. 2002 Order at 1.

It is clear that a broadscale prohibition against asking postal patrons to sign petitions at other locations, whether such requests are made verbally or in distributed pamphlets, is unconstitutional even if all postal properties are nonpublic forums. Although restrictions on speech in such forums are permissible, they still must be "reasonable." *Perry Education Ass'n*, 460 U.S. at 46. The Supreme Court has repeatedly held absolute bans on pamphleteering and canvassing invalid,

---

[9] *See, e.g.*, *People v. Mason*, 642 P.2d 8, 13 (Colo. 1982) (en banc) ("The offense of soliciting is complete when the offender solicits another for prostitution . . . . The prostitute's subsequent decision to engage or not to engage in a sexual act with her customer is not essential to th[is] crime[].")*; People v. Burt*, 288 P.2d 503, 505 (Cal. 1955) ("[Solicitation of a felony,] unlike conspiracy, does not require the commission of any overt act. It is complete when the solicitation is made, and it is immaterial that the object of the solicitation is never consummated, or that no steps are taken toward its consummation.").

whether applied to nonpublic governmental forums[10] or to private property,[11] because of their substantial overbreadth.

None of the government interests previously identified -- against disturbing postal patrons, impeding their access, or invading their privacy -- reasonably justifies an across-the-board prohibition of pure solicitation on postal sidewalks. Although simply asking for a signature might in some circumstances create one or another of those problems, it is doubtful that it would do so in many. Nor is there any reason to believe that requesting signatures is any more disruptive, or invasive, than is approaching (or talking to) a postal patron in the course of "[l]eafleting, distributing literature, picketing, and demonstrating," which the postal regulations do not prohibit on exterior postal property. 39 C.F.R. § 232.1(h)(3). Indeed, the Postal Service does not even attempt to defend the regulation if it is construed as applying to pure solicitation. *See* Oral Arg. Tape at 44:51-45:29.

To do so would appear to be an impossible task in light of Supreme Court precedent. In *Watchtower Bible*, for example, the Court found facially unconstitutional a municipal ordinance

---

[10]*See Lee v. International Soc'y for Krishna Consciousness, Inc.* [*Lee v. ISKCON*], 505 U.S. 830 (1992) (holding unconstitutional a ban on leafleting in airport terminals); *Jews for Jesus*, 482 U.S. at 575-76 (holding unconstitutional a ban that effectively prohibited, within an airport terminal, "talking" or "the wearing of campaign buttons or symbolic clothing" that was not "airport related," noting that "no conceivable governmental interest would justify such an absolute prohibition of speech").

[11]*See Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Village of Stratton*, 536 U.S. 150, 160 (2002) (noting that "[f]or over 50 years, the Court has invalidated restrictions on door-to-door canvassing and pamphleteering").

that required a permit before one could go on *private* property to engage in advocacy of a political cause. *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Village of Stratton*, 536 U.S. 150, 160 (2002). The Court acknowledged that the interests advanced in support of the ordinance -- prevention of fraud and crime, and the protection of residents' privacy -- were "important interests that the Village may seek to safeguard through some form of regulation of solicitation activity." *Id.* at 165. Nonetheless, the Court said, "[w]e must also look . . . to the amount of speech covered by the ordinance and whether there is an appropriate balance between the affected speech and the governmental interests that the ordinance purports to serve." *Id.* Even though the government's interests "arguably" could support such an ordinance if "applie[d] only to commercial transactions and the solicitation of funds," *id.*, the Court found the ordinance too broad because those interests did not "support . . . its application to petitioners, to political campaigns, or to enlisting support for unpopular causes," *id.* at 168. Similarly, in *Lee v. ISKCON* the Court held that a ban on the distribution of literature in airport terminals was invalid under the First Amendment, 505 U.S. 830, 831 (1992), with Justice Kennedy[12] distinguishing the ban from one reaching only "in-person solicitation of money *for immediate* payment." *ISKCON v. Lee*, 505 U.S. at 693 (Kennedy, J., concurring in the judgments) (emphasis added); *see id.* at 704 (declaring that, while a "solicitation regulation" that "prohibit[ed] the 'solicitation *and receipt* of funds'" was

---

[12]The Court's per curiam opinion in *Lee v. ISKCON* invalidated the leafleting ban "[f]or the reasons expressed in the opinions of Justice O'Connor, Justice Kennedy, and Justice Souter" in *ISKCON v. Lee*, 505 U.S. 672 (1992). *Lee v. ISKCON*, 505 U.S. at 831.

constitutional, one that prohibited "all speech that solicits funds" would be unconstitutional (emphasis added)).[13]

The Postal Service has marshaled no stronger interest than those rejected in *Watchtower* and *ISKCON v. Lee* in defense of the regulation, as construed to ban pure solicitation. Accordingly, we conclude that this most straightforward construction of § 232.1(h)(1) renders the regulation unconstitutional on its face.

V

A limiting construction that is "fairly" possible can save a regulation from facial invalidation. *Jews for Jesus*, 482 U.S. at 575; *see New York v. Ferber*, 458 U.S. 747, 769 n.24 (1982) ("When a federal court is dealing with a federal statute challenged as overbroad, it should . . . construe the statute to avoid constitutional problems, if the statute is subject to such a limiting construction"). The Postal Service argues that Postal Bulletin 22119 is adequate to perform that office. The Bulletin modifies 39 C.F.R. § 232.1 in two respects: it permits pure solicitation -- i.e., asking for signatures but not immediately

---

[13]*See also Kokinda*, 497 U.S. at 733 (O'Connor, J., joined by three Justices) (finding a ban on "soliciting alms and contributions" on postal premises reasonable because, "[s]ince the act of soliciting alms or contributions usually has as its objective an *immediate* act of charity, it has the potentiality for evoking highly personal and subjective reactions" and thus is "inherently disruptive" (emphasis added)); *Jews for Jesus*, 482 U.S. at 574 (holding unconstitutional a ban on First Amendment activities in an airport because it "does not merely regulate expressive activity . . . that might create problems such as congestion or the disruption of the activities of those who use" the terminal).

collecting them -- on any exterior postal property;[14] and it permits both signature solicitation and collection on *Grace* sidewalks.[15] We conclude that the first modification is a plausible limiting construction, but that the latter is not.

Although the ordinary meaning of "solicit" is merely to ask, we cannot say that it would be unreasonable to read a ban on "soliciting signatures on petitions" as the Postal Service does: to apply only "to efforts to have members of the public provide signatures on Postal Service premises, and not to communications that promote the signing of petitions, polls, and surveys somewhere other than on Postal Service premises." POSTAL BULLETIN 22119, at 19. In his separate opinion in *Kokinda*, for example, Justice Kennedy accepted the government's representation that the Postal Service's ban on "[s]oliciting alms and contributions" permitted the respondents "to distribute literature soliciting support, including money contributions, provided there is no in-person solicitation for payments on the premises." 497 U.S. at 739 (Kennedy, J., concurring in the judgment). Similarly, in her plurality opinion, Justice O'Connor observed that "the act of soliciting alms or contributions usually has as its objective an *immediate* act of charity." *Id.* at 733 (O'Connor, J., joined by three other

---

[14]*See* POSTAL BULLETIN 22119, at 19 (stating that the regulation "extends only to efforts to have members of the public provide signatures on Postal Service premises, and not to communications that promote the signing of petitions, polls, and surveys somewhere other than on Postal Service premises").

[15]*See* POSTAL BULLETIN 22119, at 19 (stating that the regulation does "not apply to . . . public perimeter sidewalks, even if the Postal Service's property line extends onto such a sidewalk," and that it does not apply to exterior Postal Service property unless the "beginning of Postal Service-controlled space [is] easily distinguishable to members of the public by means of some physical feature").

Justices) (emphasis added). Accordingly, we regard the Postal Service's construction of "soliciting" as adequate to cure the problem identified in Part IV.B.

The Bulletin's statement regarding the regulation's application to *Grace* sidewalks, however, is another matter. Although a "statute must be construed, if fairly possible, so as to avoid . . . the conclusion that it is unconstitutional, . . . avoidance of a difficulty will not be pressed to the point of disingenuous evasion." *George Moore Ice Cream Co. v. Rose*, 289 U.S. 373, 379 (1933) (Cardozo, J.). Section 232.1 states that it "*applies to all* real property under the charge and control of the Postal Service." 39 C.F.R. § 232.1(a) (emphasis added). Neither a postal patron nor a postal employee charged with enforcement could reasonably read the regulation's language and conclude -- as the Bulletin declares -- that the regulation actually "*does not apply* to . . . public perimeter sidewalks, even if the Postal Service's property line extends onto such a sidewalk." POSTAL BULLETIN 22119, at 19 (emphasis added); *cf. Jews for Jesus*, 482 U.S. at 575, 577 (holding that a resolution barring "all 'First Amendment activities'" was "not fairly subject to a limiting construction"). Nor could a patron or employee read § 232.1's broad language as meaning that, in order for it to apply, the "beginning of Postal Service-controlled space must be easily distinguishable to members of the public by means of some physical feature." POSTAL BULLETIN 22119, at 19. This conclusion is not particularly surprising, because this provision of the Bulletin is not really an "interpretation" of the regulation at all. Rather, as the government explains, it is "no more than an agency decision not to enforce the Postal Service's regulations on [the described] property." Appellee's Br. at 56.

Of course, it is perfectly permissible for the Postal Service to change its enforcement policies or regulations in order to eliminate the basis for a constitutional challenge. The problem

with the change at issue here is its format. It is "published" solely in the form of an internal bulletin: it is not published in the Federal Register, is not contained in the Code of Federal Regulations, and is not posted for public examination in post offices. By contrast, all of these things are true of § 232.1, which by its terms "shall be posted and kept posted at a conspicuous place on all" postal property. 39 C.F.R. § 232.1(a).

The contrast in format, coupled with the facial inconsistency between the regulation and the Bulletin, is decisive. Citizens interested in circulating petitions have no way of knowing that the Bulletin, rather than the regulation, states the Postal Service's current policy. Were they to go to a post office and examine its public announcements board, they would find only the posted regulation. The same would be true were they to check the relevant Code section. Indeed, even if a citizen were to become aware of the existence of the Bulletin, he or she could not confidently rely on it. Section 232.1 expressly states that soliciting signatures on petitions is prohibited "except as otherwise authorized by Postal Service regulations," 39 C.F.R. § 232.1(h)(1), and it is undisputed that the enforcement policy stated in the Bulletin is not a "Postal Service regulation."

As a consequence, the Postal Bulletin cannot alone temper the regulation's chill of First Amendment rights. That is particularly so because the regulation makes its violation punishable by criminal fine and imprisonment. *See* 39 C.F.R. § 232.1(p)(2). As the Supreme Court has emphasized, the "severity of criminal sanctions may well cause speakers to remain silent rather than communicate *even arguably* unlawful words, ideas, and images." *Reno v. ACLU*, 521 U.S. at 872 (emphasis added); *see Free Speech Coalition*, 535 U.S. at 244.

We will therefore remand this case to the district court with instructions to determine whether, by its application to *Grace*

sidewalks, § 232.1 abridges "a 'substantial' amount of protected free speech." *Hicks*, 539 U.S. at 118 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). If it does, the regulation is facially invalid on that ground. *See supra* Part IV.A. Of course, that issue may be pretermitted if the Postal Service amends the regulation to exclude such sidewalks from the prohibition against solicitation. *See Hicks*, 539 U.S. at 119 (holding that "*all* enforcement" of a facially overbroad statute is barred "'until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression'" (quoting *Broadrick*, 413 U.S. at 613)). Because we need go no further to dispose of this appeal, and because further analysis may be unnecessary depending upon the outcome of the remand proceedings, we do not consider the appellants' other challenges or the district court's other rulings.

## VI

For the foregoing reasons, the judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*