BROWN, Circuit Judge,
concurring:
I join the Court’s public forum analysis in full, and given our holding in Initiative & Referendum Inst. v. U.S. Postal Serv., 417 F.3d 1299, 1314-17 (D.C.Cir.2005), I *1075 join my colleagues in acknowledging the Postal Service’s scheme of banning signature-collection while permitting signature-solicitation is one we previously approved. After all, as the Court explains, the Postal •Service is merely “following our lead” from that case, Majority Op. at 1073, since we suggested there that banning only same-place signature-collecting would “cure the problem” posed by an outright ban on solicitation of signatures. 417 F.3d at 1317.
But this half-a-loaf solution seems more persnickety than practical. The harms about which the Postal Service is concerned — the impeding of traffic and the appearance of Postal Service endorsement, Majority Op. at 1073 — and, indeed, all of the harms I can imagine,[1] accrue in the initial, permitted phase of a signature-gathering encounter: the solicitation.
As I imagine an encounter under the current set of regulations, a postal patron will approach the door to a post office. The patron will then be approached by a signature-gatherer and asked to sign a petition, at which point, one of two things will happen: the patron may ignore the signature-gatherer, giving him the brushoff and walking right into the post office, or seek to sign the petition. All of these interactions are permitted. Once the patron expresses an interest in signing the petition, however, the signature-gatherer will have to explain that postal regulations prohibit collecting signatures in this location, and invite the patron to move to the nearest Grace sidewalk to affix his signature.[2]
From the perspective of the uninterested patron, the disruption is the same, collection or no collection. But from the perspective of the interested patron, the disruption is only increased by the awkward two-step required by the regulations — that patron must further deviate from her postal business in order to complete her interaction with a signature-gatherer. Whatever doorway impedance is alleviated by moving signature-collection offsite is surely netted out by the necessarily lengthier explanations of the convoluted rules.
Nor does this arrangement dissipate concern about the Postal Service’s apparent endorsement of the message of signature-gatherers. Postal patrons are unlikely to make any useful distinction on this score between soliciting signatures and collecting them.
When the Supreme Court has evaluated similar speech restrictions, it has only encountered bans on solicitation, not bans on collection where solicitation remains permitted. Compare Int’l Soc’y for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 676, 683-85, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992) (upholding ban on in-person solicitation of money); United States v. Kokinda, 497 U.S. 720, 724, 733, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990) (“[T]he single *1076 issue before us [is whether] the Government’s prohibition of solicitation on postal sidewalks [is] unreasonabM”). Thus, while we can only commend the Postal Service for so assiduously following our directions, the Service may conclude, on further reflection, that the present compromise causes more confusion and disruption than it abates. In that case, the Service may decide to do what is sensible and permit the entire signature-gathering encounter — for that would surely not be unreasonable.

. For example, Frederick Hintenach, a Postal Service official involved in writing the regulation, testified that "what drove the intrusiveness was the fact that [postal patrons] were being approached as they were trying to get in and out of the building.” Hintenach Dep. at 85 (emphasis added). This remains permitted. Hintenach went on to say, "I don’t think our customers or our employees should be subjected to the opinions of someone else if they don't choose to do so. And referendum and signature collection forces that interaction.” Id. at 94. The permitted solicitation "forces” that same interaction.

. Of the 24 states that allow citizen initiatives, 18 require petition circulators to personally witness each signature and to sign an affidavit to that effect. Nat’l Conf. of State Legis., Laws Governing Petition Circulators, http://www.ncsl.org/legislatures-elections/elections/ laws-governing-petition-circulators.aspx (last accessed June 25, 2012). Asking a supporter to mail in a signature at a later date is thus out of the question for at least these efforts.