**INITIATIVE AND REFERENDUM INSTITUTE, et al., Plaintiffs,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**No. CIV.A. 00–1246(RWR).**

United States District Court, District of Columbia.

Dec. 31, 2003.

146

Christopher James Carney, Daniel Eric Cohen, David F. Klein, John R. Ferguson, Swidler, Berlin, Shereff & Friedman, L.L.P., Arthur B. Spitzer, Washington, DC, for Plaintiffs.

Marina Utgoff Braswell, U.S. Attorney's Office, Washington, DC, for Defendant.

### *MEMORANDUM OPINION*

ROBERTS, District Judge.

Plaintiffs challenge the constitutionality of a United States Postal Service ("USPS") regulation that prohibits people from soliciting signatures for petitions, polls or surveys on exterior USPS property. The parties' initial cross-motions for summary judgment were denied because there were insufficient facts in the record to entitle either party to judgment as a matter of law. Following discovery, the parties renewed their cross-motions for

summary judgment. Because the record now establishes that this content-neutral regulation promotes a significant governmental interest and will leave open ample alternative channels of communication, defendant's motion will be granted and plaintiffs' motion will be denied.

## BACKGROUND

The relevant facts were set out in the Memorandum Opinion of August 31, 2000 in this case and will not be entirely repeated here. *See Initiative and Referendum Inst. v. United States Postal Serv.,* 116 F.Supp.2d 65, 67–68 (D.D.C.2000). Briefly, USPS regulations restrict certain conduct on postal property. Subsection 232.1(h)(1) of Title 39 of the Code of Federal Regulations provides:

> Soliciting alms and contributions, campaigning for election to any public office, collecting private debts, soliciting and vending for commercial purposes (including, but not limited to, the vending of newspapers and other publications), displaying or distributing commercial advertising, *soliciting signatures on petitions, polls, or surveys (except as otherwise authorized by Postal Service regulations),* and impeding ingress to or egress from post offices are prohibited.

39 C.F.R. § 232.1(h)(1) (2002) (emphasis added). The emphasized language, added in 1998, gave rise to this suit. *See Initiative and Referendum Inst.,* 116 F.Supp.2d at 67–68.

Plaintiffs have moved for summary judgment arguing that § 232.1(h)(1) is unconstitutional on its face and as applied to them because it is a content-based restriction on speech in a public forum. As such, they contend, the regulation cannot withstand the test of being narrowly tailored to serve a compelling governmental interest. Plaintiffs further argue that the regulation

is overbroad, is void for vagueness and is enforced in a discriminatory manner.

Defendant has also moved for summary judgment arguing that exterior USPS property is a nonpublic forum and, therefore, § 232.1(h)(1) is valid because it is viewpoint-neutral and reasonable. Alternatively, defendant claims that even if the property at issue here is considered a public forum, § 232.1(h)(1) is a valid regulation of time, place and manner of expression as it is content-neutral, narrowly tailored to serve a significant government interest and leaves open ample alternative channels of communication.

## DISCUSSION

Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A party seeking summary judgment must provide the district court with a factual record sufficient to demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may support its motion successfully if it " 'inform[s] the district court of the basis for its motion, and identif[ies] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1032 (D.C.Cir.1988) (quoting *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548 (internal citation omitted)).

Plaintiffs assert that the regulation is a content-based restriction on speech in a traditional public forum that fails the test of being narrowly tailored to serve a compelling governmental interest. Pls.'

Mem. Supp. Summ. J. at 4–22; *see Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). They maintain that § 232.1(h)(1) is unconstitutional *on its face* and seek to enjoin the defendant from enforcing the regulation on any exterior post office property nationally. (Pls.' Mem. Supp. Summ. J. at 4–22; Am. Compl. at 22–23.) As was stated in the August 31, 2000 opinion, that relief would require proof that all exterior post office properties are traditional public fora. *Initiative and Referendum Inst.*, 116 F.Supp.2d at 73. Traditional public forum analysis requires assessing the nature, use and character of each property involved to determine whether it has been held open to assembly and debate. *Perry*, 460 U.S. at 45, 103 S.Ct. 948. As approximately 34,000 postal installations exist (Def.'s Mem. Supp. Summ. J., Ex. A at ¶ 6 and Ex. B at ¶ 3), a proper forum analysis requiring an examination of aspects of each of those properties would be unwieldy. The record still lacks the specific historical information about each of the approximately 34,000 postal installations that would be essential to support an injunction applicable to all such locations. Such an effort would not be required, however, if the regulation passed constitutional muster under the most exacting scrutiny that would apply were all the properties deemed to be traditional public fora.

The Supreme Court conducted a forum analysis regarding a post office sidewalk in *United States v. Kokinda*, 497 U.S. 720, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990) (plurality opinion). That case involved a sidewalk outside a post office in Bowie, Maryland. *See id.* at 723, 110 S.Ct. 3115. The plurality opinion in *Kokinda*, joined by four Justices, held that the Bowie post office sidewalk did "not have the characteristics of public sidewalks traditionally open to expressive activity." *Id.* at 727,

110 S.Ct. 3115. Stating that "the location and purpose of a publicly owned sidewalk is critical" in determining whether it is a public forum, *id.* at 728–29, 110 S.Ct. 3115, the plurality held that the post office sidewalk was not a public forum because it was "constructed solely to provide for the passage of individuals engaged in postal business." *Id.* at 727, 110 S.Ct. 3115.

Justice Kennedy, in concurrence, found that "there remains a powerful argument that, because of the wide range of activities that the Government permits to take place on this postal sidewalk, it is more than a nonpublic forum." *Id.* at 737, 110 S.Ct. 3115 (Kennedy, J., concurring). He declined to decide the forum issue however, finding that even if the sidewalk was a traditional public forum, the regulation was permissible under the applicable time, place and manner rules. *Id.* at 738, 110 S.Ct. 3115.

Justice Kennedy's approach in *Kokinda* is instructive here. *See generally id.* at 737–39, 110 S.Ct. 3115 (Kennedy, J., concurring). Assuming that the exterior postal properties here are indeed traditional public fora, the most exacting standard of scrutiny applicable to this regulation which has already been found to be content-neutral, *see Initiative and Referendum Inst.*, 116 F.Supp.2d at 74, is whether the regulation is a reasonable time, place and manner restriction that is narrowly tailored to promote a significant government interest and leaves open ample alternative channels for communication. *Perry*, 460 U.S. at 45, 103 S.Ct. 948. "The crucial question [in assessing time, place and manner restrictions] is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." *Grayned v. City of Rockford*, 408 U.S. 104, 116, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

## I. SIGNIFICANT GOVERNMENTAL INTEREST

According to defendant, § 232.1(h)(1) promotes the significant governmental interest of successfully carrying out postal business by making post offices and surrounding postal property attractive to customers whose payments fund USPS operations. (Def.'s Mot. Summ. J. at 30–33). Plaintiffs contend that defendant's stated governmental interest is unpersuasive and not supported by the record. (Pls.' Mem. Opp. at 21–26.)

It is undisputed that "[USPS] operations are funded by customer fees paid by rate payers, and nearly all those who visit post offices do so in order to conduct postal business." (Def.'s Stmt. Fact Supp. Summ. J. at ¶ 2.) The USPS must compete with the private sector for business other than first class mail, in part, by making attractive to customers its postal locations where services are provided. (Id. at ¶ 3.) Because the "[g]overnment, as much as any other property owner, is allowed to manage its property in such a way as to best carry on its business," *Initiative and Referendum Inst.*, 116 F.Supp.2d at 70 (citing *Adderley v. Florida*, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966)), the significance of defendant's interest in controlling activity on USPS exterior property must be assessed in light of its business nature and function. *See Heffron v. International Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 650–51, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981).

In promulgating the 1998 amendment to § 232.1(h)(1), defendant determined that a complete ban on gathering signatures on petitions, polls and surveys on USPS property was necessary "to minimize the disruption of postal business and to provide unimpeded ingress and egress of customers and employees to and from post offices." 62 Fed.Reg. 61481 (Nov. 18, 1997).

To support the continuing viability of this determination, defendant submitted declarations, affidavits and deposition testimony from USPS employees, and a USPS customer, regarding customer complaints about solicitors gathering signatures for petitions received before and after the 1998 amendment at nine of the twelve postal properties named in plaintiffs' amended complaint. (*See* Def.'s Mem. Supp. Summ. J., Ex. F at 54 (noting customer complaints regarding signature gatherer who was being "forceful" and "interfering with people trying to come into the [Belleville, Michigan post office] building"); *id.*, Ex. G at 89–90 (recalling customer complaints about access and egress to the Detroit, Michigan main post office building being hindered by individuals engaged in petitioning activities); *id.*, Ex. J at ¶¶ 3–7 and Tab A (July 9, 1994 memo and Oct. 14, 1994 notes) (noting complaints related to the Fort Lauderdale, Florida postal building from two female customers who were "visibly upset and crying" that they were "physically blocked by signature gatherers who would not let them pass by on the walkway unless they signed a petition"; recalling customer complaints about petition signature gatherers "obstructing entrances to [the Fort Lauderdale postal] facilities and disturbing customers transacting postal business, including verbal harassment in an effort to elicit signatures"); *id.*, Ex. K at Dep. Exs. 10, 11 and 12, Ex. AA at ¶¶ 3, 5–7, and Ex. BB at ¶ 2 (noting customer complaint from fall of 1999 about a person soliciting signatures for a petition at the Garden Valley, Idaho post office arguing with a customer because the customer did not want to sign the petition); *id.*, Ex. O at ¶ 5 (recalling customer complaint about persons soliciting signatures at the Halfway, Oregon postal facility); *id.*, Ex. P at ¶¶ 6–7 (noting customer complaints "objecting to persons

**150**

soliciting signatures for petitions" at the Moab, Utah post office); *id.,* Ex. Q at ¶¶ 4–6 (recalling customer complaints about being approached by petitioners and solicitors, and customer complaint about a "rudely offensive" signature solicitor, at the Reno, Nevada postal building); *id.,* Ex. S at ¶ 8 and Ex. CC at ¶¶ 3–4, 6 (recalling a post–1998 incident at the Salem, Oregon post office "when petitioners set up tables on postal property to gather signatures[,]" which "generated many customer complaints" due to the gatherers' "confrontational approach" and caused several customers to "not get out of their cars" to conduct postal business; noting pre–1995 customer complaints that petitioners gathering signatures were "pushy" and "would not leave them alone"); *id.,* Ex. U at ¶¶ 7–8 (noting post-September 2001 complaints about petition signature gatherers from customers "who did not want to be bothered while trying to conduct postal business" at the Tempe, Arizona post office).)

Defendant also offered the declarations and deposition testimony of Frederick J. Hintenach, Manager of USPS's Customer Services Operations, Delivery and Retail Department, who is responsible for USPS standard operating policies and procedures. (*Id.,* Ex. A at ¶ 3, Ex. B at ¶¶ 1, 3.) Hintenach states that since at least 1990, "complaints from both customers and postal employees have surfaced nationwide about postal property being used for solicitation and signature gathering activities that disturb and impede customers who

come to [USPS] postal facilities to conduct postal business." (*Id.,* Ex. B at ¶ 4; *see id.,* Ex. A at ¶ 4.) He represents that signature gathering activities act as a "real impediment to carrying out postal business" (*id.,* Ex. A. at ¶ 8; *see id.,* Ex. DD at 118–19) and are perceived by customers to be "intimidating and intrusive." (*Id.* at ¶ 13; *see id.,* Ex. DD at 33–34, 36.)

The declarations, affidavits and deposition testimony in this case show that defendant has a significant governmental interest in carrying out postal business in a way that ensures prompt, reliable and efficient services to USPS patrons. *See* 39 U.S.C. § 101 (2003); *see also Kokinda,* 497 U.S. at 739, 110 S.Ct. 3115 (Kennedy, J., concurring) ("[T]he Government here has a significant interest in protecting the integrity of the purposes to which it has dedicated the property, that is, facilitating its customer's postal transactions."); *National Anti–Drug Coalition, Inc. v. Bolger,* 737 F.2d 717, 727 (7th Cir.1984) (holding that postal stations "clearly have a significant interest and obligation in providing postal patrons with prompt, reliable, and efficient services").[1] Section 232.1(h)(1) is therefore constitutional if it is narrowly tailored and leaves ample alternative channels for communication.

## II. NARROWLY TAILORED

While § 232.1(h)(1) must be narrowly tailored to meet the asserted significant governmental interest, it need not be

1. Defendant asserts two other governmental interests in support of § 232.1(h)(1). First, defendant claims that the regulation advances the valid interest of "avoiding the appearance of bias or partisanship that can accompany some petitioning activities." (Def.'s Mem. Supp. Summ. J. at 33.) Defendant also claims that the regulation advances the governmental interest of having USPS employees "engaged in postal business, as opposed to spending their time trying to decide whether the request for solicitation is one permitted under USPS regulations or not." (*Id.*) Apart from whether the factual record in this case is sufficient to support a finding that either of these asserted governmental interests is significant, these interests are not addressed here since § 232.1(h)(1) is justified given the USPS's significant governmental interest in carrying out its business in a prompt, reliable and efficient manner.

"the least restrictive or least intrusive means" available to the government to withstand scrutiny. *Ward v. Rock Against Racism,* 491 U.S. 781, 798, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). The " 'less-restrictive-alternative analysis ... has never been a part of the inquiry into the validity of a time, place, and manner regulation.' " *Id.* (quoting *Regan v. Time, Inc.,* 468 U.S. 641, 657, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984) (plurality opinion)). "The expertise of courts lies in determining whether an agency's decision is within the zone of constitutionality, not in choosing between options within that zone." *White House Vigil for ERA Committee v. Clark,* 746 F.2d 1518, 1531 (D.C.Cir.1984). A court therefore may not substitute its judgment for that of the regulators by requiring an agency to adopt the least restrictive alternative. *Id.* "[I]f the regulation lies within the zone prescribed by the first amendment it is constitutional and must be affirmed as such by a court before which it is challenged." *Id.* at 1531–32.

■ Here, defendant is responsible for promulgating uniform regulations applicable to approximately 34,000 postal facilities (Def.'s Mem. Supp. Summ. J., Ex. A at ¶ 6), each of which has unique physical characteristics. The USPS's authority to promulgate regulations cannot, therefore, "be made to depend on all of the variations of climate, population, density, and other factors that may vary significantly" from postal station to postal station. *U.S. Postal Service v. Greenburgh Civic Ass'n,* 453 U.S. 114, 133, 101 S.Ct. 2676, 69 L.Ed.2d 517 (1981). If the USPS is "to operate as efficiently as possible a system for the delivery of mail which serves a Nation ... it must obviously adopt regulations of general character having uniform applicability throughout the more than three million square miles which the United States embraces." *Id.*

As implemented, § 232.1(h)(1) prohibits no more conduct than that necessary to advance the significant governmental interest of carrying out postal business in a way that ensures prompt, reliable and efficient services to USPS patrons. As the August 31, 2000 Memorandum Opinion recognized, gathering signatures "involves a signature gatherer stopping passersby entering the post office and confronting them with information *and* a request for a signature." *Initiative and Referendum Inst.,* 116 F.Supp.2d at 75 (emphasis added). Section 232.1(h)(1) targets this latter, more disruptive conduct, but leaves plaintiffs and members of the public free to continue to engage in leafleting, public address, public assembly, distribution of literature, picketing and demonstrating on exterior areas of USPS property, including postal sidewalks and parking lots.[2] *See* 39 C.F.R. § 232.1(h)(3); Def.'s Proposed USPS Postal Bulletin, Ex. 1 at 1. Thus, though § 232.1(h)(1) prohibits the actual act of signature gathering for petitions, polls and surveys on postal property, the regulation does not prohibit plaintiffs and members of the public interested in gathering signatures from "engaging in other forms of expressive activities on the exterior areas of postal property that are open to the public." (Def.'s Proposed USPS

---

2. It is the burden inherent in signature gathering that the USPS justifiably relies upon in concluding that such conduct is disruptive of its business. *See Kokinda,* 497 U.S. at 736, 110 S.Ct. 3115 (plurality opinion). A passerby "need not ponder the contents of a leaflet ... in order to mechanically take it out of someone's hand." *Kokinda,* 497 U.S. at 734, 110 S.Ct. 3115 (plurality opinion). A passerby must, however, " 'listen, comprehend, decide, and act' " in order to respond to a request for a signature, *Initiative and Referendum Inst.,* 116 F.Supp.2d at 75 (quoting *Kokinda,* 497 U.S. at 734, 110 S.Ct. 3115 (plurality opinion)).

Postal Bulletin, Ex. 1 at 1.) These other forms of expressive conduct can be used by plaintiffs and members of the public to provide information to postal customers and to direct those individuals interested in signing a particular petition, poll or survey to a location beside or near postal property for signature gathering purposes. Section 232.1(h)(1)'s restriction, then, is appropriately narrow.

### III. AMPLE ALTERNATIVE CHANNELS FOR COMMUNICATION

▇▇▇ Leaving open ample alternative channels for communication generally enables a speaker to convey her message in some manner although not at the exact time or in the precise manner she may wish. *Initiative and Referendum Inst.*, 116 F.Supp.2d at 72; *see also Community for Creative Non–Violence v. Turner*, 893 F.2d 1387, 1393 (D.C.Cir.1990) (recognizing validity of regulations, ordinances and guidelines that prohibit certain types of conduct while permitting an intra-forum alternative to other expressive conduct) (citing *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 295, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984); *Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988); *Ward*, 491 U.S. at 802, 109 S.Ct. 2746). A regulation does not necessarily fail the test for leaving open alternative channels for communication merely because it reduces the audience a speaker may reach within the forum. *Id.* (citing *Ward*, 491 U.S. at 802, 109 S.Ct. 2746).

▇▇▇ Section 232.1(h)(1)'s prohibition on soliciting signatures on petitions, polls or surveys "extends only to efforts to have members of the public provide signatures on postal premises, and not to communications that promote the signing of petitions, polls, and surveys somewhere other than on postal property." (Def.'s Proposed USPS Postal Bulletin, Ex. 1 at 1.) Further,

§ 232.1(h)(1) "[does] not apply to municipal, or other public perimeter sidewalks, even if the [USPS's] property line extends onto such a sidewalk," (*id.*), but rather extends only to USPS property "easily distinguishable to members of the public by means of some physical feature." (*Id.* at 2; *see* Def.'s Mem. Supp. Summ. J., Ex. B at ¶ 6.)

Section 232.1(h)(1) allows for ample alternative channels for communication. As is discussed above, plaintiffs and members of the public interested in gathering signatures for petitions, polls or surveys are not precluded from engaging in other forms of expressive conduct on exterior postal property which is open to the public, including postal sidewalks and parking lots. (*See* Def.'s Proposed USPS Postal Bulletin, Ex. 1 at 1.) The regulation continues to permit forms of communication—leafleting, public address, public assembly, distribution of literature, picketing, and demonstrating— that plaintiffs and members of the public can utilize to promote petition, poll or survey signing on non-postal, public property. (*See id.*; 39 C.F.R. § 232.1(h)(3).) The text of the regulation, as supplemented by defendant's Proposed USPS Postal Bulletin regarding the implementation and enforcement of § 232.1(h)(1), will not restrict plaintiffs in their ability to communicate information, ideas, thoughts and expressions to postal patrons, and to have ample alternative channels available to them to encourage postal patrons to go to municipal or other public property to sign a petition, poll or survey.

Because the totality of the record demonstrates that, as implemented, § 232.1(h)(1) is a narrowly tailored regulation designed to promote the significant governmental interest of carrying on business at all of its postal facilities in a prompt, reliable and efficient manner, and leaves open to plaintiffs and members of

the public ample alternative channels for communication, defendant's motion for summary judgment on Count I of plaintiffs' amended complaint will be granted.

## IV. VAGUENESS AND OVERBREADTH

 Plaintiffs claim that § 232.1(h)(1) is unconstitutionally vague and overbroad because it "fails to provide unambiguous guidance on where its strictures apply or what is prohibited." (Pls.' Mem. Supp. Summ. J. at 37.) "A vague law denies due process by imposing standards of conduct so indeterminate that it is impossible to ascertain just what will result in sanctions . . . ." *Hastings v. Judicial Conf. of the U.S.*, 829 F.2d 91, 105 (D.C.Cir.1987). Thus, regulations must provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that she may act accordingly, and provide clear standards for those who apply them in order to prevent arbitrary and discriminatory enforcement. *See Grayned*, 408 U.S. at 108–09, 92 S.Ct. 2294. "[I]n contrast, a law that is overbroad may be perfectly clear but impermissibly purport to penalize protected First Amendment activity." *Hastings*, 829 F.2d at 105. When conduct, rather than speech, is at issue, " 'the overbreadth of a [regulation] must not only be real, but substantial as well, judged in relation to the [regulation's] plainly legitimate sweep.' " *Id.*

 Defendant's Proposed USPS Postal Bulletin amply addresses plaintiffs' concern. The proposed bulletin not only provides additional guidance as to where the regulation does and does not apply (Def.'s Proposed USPS Postal Bulletin, Ex. 1 at 1–2), but it also provides concrete examples of "easily distinguishable" postal property on which the regulation can be enforced. For example, the proposed bul-

letin instructs that "a postal sidewalk that is perpendicular to the city sidewalk would indicate to members of the public that they are entering onto postal property." (*Id.* at 2.) The proposed bulletin also indicates that "stairs leading up to the entrance of a post office" would serve to differentiate postal property from non-postal property. (*Id.*) Further, the proposed bulletin sets forth in precise terms that only specified conduct—signature gathering—on postal property is prohibited, leaving plaintiffs and members of the public free to engage in other expressive activities that are designed to encourage signing petitions, polls or surveys on non-postal property. (*Id.* at 1–2.) Defendant's motion for summary judgment on Counts II and III of plaintiffs' amended complaint will therefore be granted.

## V. DISCRIMINATORY ENFORCEMENT

 Plaintiffs' final claim that "[t]he practices of various post offices and postmasters throughout the country . . . in enforcing [§ 232.1(h)(1) ] has resulted in discrimination against Plaintiffs on the basis of the content of their speech, petition or viewpoint" (Am. Compl. at ¶ 102) is not supported by the record. The Court has previously determined that the regulation is content-neutral, *see Initiative and Referendum Inst.*, 116 F.Supp.2d at 74, and plaintiffs provide no evidence that the regulation has been or will be enforced in a discriminatory manner based on the content of the speech at issue. The affidavits and declarations submitted by plaintiffs as exhibits in support of their motion for summary judgment demonstrate that § 232.1(h)(1) has been applied in a consistent manner—to remove signature gatherers from non-public, exterior USPS postal property—irrespective of the content of the petitioners' speech and even in the

absence of the additional guidance provided by the Proposed USPS Postal Bulletin. (*See, e.g.,* Pls.' Mem. Supp. Summ. J., Ex. 44 at ¶ 4 (postal employee informing "Kids First! Yes!" petitioner that soliciting signatures was not allowed on Ann Arbor, Michigan postal property); *id.,* Ex. 45 at ¶ 4 (same as to "Kids First! Yes!" petitioner on Belleville, Michigan postal property); *id.,* Ex. 46 at ¶ 4 (same as to "Let Local Votes Count" petitioner on Grand Rapids, Michigan postal property); *id.,* Ex. 47 at ¶ 5 (same as to Humane Society of the United States petitioners on USPS property); *id.,* Ex. 48 at ¶ 10 (same as to "numerous petition gathering firms, individual petitioners, and grass roots activists" on USPS property); *id.,* Ex. 50 at ¶ 4 (same as to "Utah Voters Association" petitioners on USPS property); *id.,* Ex. 51 at ¶ 4 (same as to "The Coalition for the Protection of Marriage in Nevada" petitioners on Reno, Nevada postal property); *id.,* Ex. 52 at ¶ 5 (same as to "ProPAW" petitioner on Salem, Oregon postal property).) Indeed, the evidence of defendant's consistent enforcement of § 232.1(h)(1) may result from the fact that "there is no authority at the area or local level either to modify the regulation or deviate from enforcing it." (Def.'s Mem. Opp., Ex. LL at 73; *see* Def.'s Mem. Supp. Summ. J., Ex. A at ¶ 6 ("The Postal Service strives to treat all members of the public in a fair and uniform manner, and . . . the best way to achieve this at 34,000 different facilities . . . is to have rules which are as simple and clear cut as possible, and which leave as little room as possible for subjective interpretation and misinterpretation."); *id.,* Ex. B at ¶ 5 ("[The USPS] has informed [its] managers . . . that our regulations governing conduct on postal premises . . . are valid and must be enforced at every postal facility.").) Consequently, plaintiffs' scant evidence that § 232.1(h)(1) was enforced on public sidewalks at two

USPS postal facilities (*see* Pls.' Mem. Supp. Summ. J., Ex. 49 (Great Falls, Montana); *id.,* Ex. 53 at Interrog. Answer No. 2 (Detroit, Michigan and Great Falls, Montana)) is insufficient to establish that defendant has applied the regulation in an unfair and discriminatory manner. Because these "isolated instances of undiscovered violations of [§ 232.1(h)(1)]," *Clark,* 468 U.S. at 295 n. 6, 104 S.Ct. 3065, do not demonstrate that defendant has unconstitutionally enforced the regulation in an arbitrary and discriminatory manner, defendant's motion for summary judgment on Count IV of plaintiffs' amended complaint will be granted.

## CONCLUSION

Section 232.1(h)(1) is a content-neutral regulation that is narrowly tailored to serve a significant government interest and leaves open ample alternative channels of communication to plaintiffs and members of the public. Defendant's Proposed USPS Postal Bulletin confines the implementation and enforcement of § 232.1(h)(1) to "easily distinguishable" postal property only, and not to municipal sidewalks or other public areas. The Proposed USPS Postal Bulletin also confines the implementation and enforcement of the challenged ban to signature solicitation on postal property, and does not prohibit other forms of expressive activity on postal property that are permitted by postal regulations—such as leafleting, public address, public assembly, distribution of literature, picketing, and demonstrating—to encourage signing petitions beside or near postal property. Further, § 232.1(h)(1) is neither vague, nor overbroad, nor does the record show that it is enforced in a discriminatory manner. Because no genuine issues of material fact exist with respect to the constitutionality of § 232.1(h)(1) and defendant is entitled to judgment as a

matter of law, defendant's motion for summary judgment on Counts I, II, III and IV of plaintiffs' amended complaint will be granted, and plaintiffs' motion for summary judgment will be denied. A separate order accompanies this Memorandum Opinion.