**INITIATIVE AND REFERENDUM INSTITUTE, et al., Plaintiffs,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**Civil Action No. 00–CV–1246 (BJR)**

United States District Court, District of Columbia.

Signed 02/24/2014

Arthur B. Spitzer, American Civil Liberties Union of the Nation's Capital, David F. Klein, Pillsbury Winthrop Shaw Pittman, LLP, Washington, DC, for Plaintiff.

Marina Utgoff Braswell, U.S. Attorney's Office, David F. Klein, Pillsbury Winthrop Shaw Pittman, LLP, Washington, DC, for Defendant.

## ORDER AFFIRMING REPORT AND RECOMMENDATION

Barbara Jacobs Rothstein, United States District Court Judge

### I. INTRODUCTION

Plaintiffs, nonprofit organizations and individuals who are engaged in efforts to place initiatives on state ballots, challenged a United States Postal Service (hereinafter "Postal Service") regulation that prohibited the solicitation and collection of signatures for petitions, polls, or surveys on all postal-owned property. Plaintiffs sought a determination that the regulation violated the free speech clause of the First Amendment on its face and as it applied to them. The dispute has been through three rounds of summary judgment motions and

to the D.C. Circuit twice. The current motion—Plaintiffs' request for attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA")—is the last step in this long-running dispute. Dkt. No. 162 ("Pls.' Mot.").

The motion was referred to Magistrate Judge Alan Kay for resolution pursuant to Federal Rule of Civil Procedure 72(b) and Local Civil Rule 72.2(a). Dkt. No. 170. Magistrate Judge Kay determined that Plaintiffs are not a prevailing party for purposes of EAJA and, thus, recommended that Plaintiffs' motion be denied. Dkt. No. 175 ("R & R"). Plaintiffs timely filed objections to the Report and Recommendation (Dkt. No. 176 ("Pls.' Objs.")), which have been fully briefed by the parties and are now ripe for adjudication. Dkt. No. 178 ("Def.'s Resp."); Dkt. No. 180 ("Pls.' Reply"). This Court reviews *de novo* the portion of the Report and Recommendation to which Plaintiffs object. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1). The Court may "accept, reject, or modify" Magistrate Judge Kay's recommendation. *Id.*; *Young v. District of Columbia*, 893 F.Supp.2d 125, 129 (D.D.C.2012).

For the reasons stated below, the Court finds that Magistrate Judge Kay reached the correct conclusion in finding that Plaintiffs are not a prevailing party for purposes of attorney's fees under EAJA. Therefore, Plaintiffs' objections are OVERRULED and the Report and Recommendation is AFFIRMED.

## II. BACKGROUND

The background of this case is set out in *Initiative & Referendum Inst. v. U.S. Postal Service*, 297 F.Supp.2d 143 (D.D.C. 2003) ("*IRI I*"); *Initiative & Referendum Inst. v. U.S. Postal Service*, 417 F.3d 1299 (D.C.Cir.2005) ("*IRI II*"); *Initiative & Referendum Inst. v. U.S. Postal Service*, 741 F.Supp.2d 27 (D.D.C.2010) ("*IRI III*"); *Initiative & Referendum Inst. v. U.S. Postal Service*, 685 F.3d 1066, 1068–69 (D.C.Cir.2012) ("*IRI IV*"), and the Report and Recommendation. In brief, the Postal Service has regulations in place that restrict certain activities on certain postal-owned property. Relevant to this case, the postal regulations restrict "expressive activity" on exterior postal property, specifically on the sidewalks surrounding post offices.[1] These sidewalks can be divided into two categories: (1) *Grace* sidewalks—sidewalks comprising the outer boundaries of the [postal] grounds" that are "indistinguishable from any other sidewalk," and (2) non-*Grace* sidewalks—sidewalks "constructed solely to provide for the passage of individuals engaged in postal business" that lead "only from the parking area to the front door of the post office."[2]

In 1998, the Postal Service banned "soliciting signatures" on "all real property under the charge and control of the Postal Service" (hereinafter known as "the 1998 Regulation"). *See* 39 C.F.R. § 232.1(h)(1) (1998). In other words, the 1998 Regulation banned "soliciting signatures" on both *Grace* and non-*Grace* sidewalks on postal-owned property. Plaintiffs brought a facial challenge to the 1998 Regulation, arguing that it violated the First Amendment by banning expressive activity on postal prop-

---

**1.** "Expressive activity includes, among other things, soliciting signatures, leafleting, picketing, protesting, public gathering, and displaying signage. *IRI III*, 741 F.Supp.2d at 31 n. 3.

**2.** The term *"Grace* sidewalks" comes from *United States v. Grace*, 461 U.S. 171, 179–80, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983), in which the Supreme Court held that sidewalks on the outer boundaries of government property that are indistinguishable from public sidewalks do not lose their status as public forums merely because they abut property dedicated for uses other than free speech.

erty that constitutes public forums. *See IRI II*, 417 F.3d 1299 (D.C.Cir.2005).

By Memorandum Opinion and Order dated August 31, 2000, United States District Court Judge Richard W. Roberts denied the parties' respective cross-motions for summary judgment.[3] Dkt. No. 16. Among other conclusions, the court determined that the factual record compiled by the parties was insufficient for it to rule as a matter of law on the First Amendment claims presented because there was insufficient information about the forum status of the property at issue. *Id.* at 11. Based on this conclusion, Judge Roberts rejected Plaintiffs' claim that the 1998 Regulation was unconstitutional on its face. *Id.* at 16–17.

Subsequent to the August 31, 2000 decision, Plaintiffs amended their complaint to add an "as-applied" challenge to the 1998 Regulation. Dkt. No. 25. Following discovery related to Plaintiffs' claims, the parties renewed their motions for summary judgment. Dkt. Nos. 66 and 67. Thereafter, Judge Roberts held a hearing on the parties' cross motions for summary judgment. At the hearing, the Postal Service announced that it had "changed its articulated position from the one it took early in this litigation to one more favorable to [P]laintiffs." Dkt. No. 87 at 1. The change in the Postal Service's position was twofold. First, the Postal Service stated that it would instruct its postmasters to refrain from enforcing the 1998 Regulation as to activity that occurred on *Grace*-like sidewalks. *IRI II*, 417 F.3d at 1304. (citing Motions Hr'g Tr. at 29, 32–34 (Sept. 24, 2002)). Second, the Postal Service stated that it would also instruct its postmasters to enforce the 1998 Regulation only as to the collection of signatures (as distinct from the solicitation of signatures). *IRI II*,

417 F.3d at 1304. In other words, individuals would be free to stand on postal-owned property and request that postal patrons sign a petition; however, the actual act of signing the petition must occur either on nonpostal-owned property or on a *Grace*-like sidewalk. *Id.*

Judge Roberts directed the Postal Service to submit a proposal setting forth its revised position on the 1998 Regulation, and further stated that the court "would be relying on [the Postal Service's] changed position in deciding [ ] the pending summary judgment motions." *Id.* Thereafter, on October 4, 2002, the Postal Service provided the district court with a draft bulletin consistent with what it represented at the hearing. Dkt. Nos. 88 & 89, 168, Ex. A.

On December 31, 2003, Judge Roberts granted the Postal Service's motion for summary judgment and denied Plaintiff's cross-motion. *IRI*, 297 F.Supp.2d 143. The court again rejected Plaintiffs' facial challenge to the 1998 Regulation, observing that the 34,000 postal facilities have "unique physical characteristics." *Id.* In reaching the decision, Judge Roberts assumed, without finding, that if the postal property in question constituted a public forum, the 1998 Regulation would pass constitutional muster as it was content-neutral, narrowly tailored to serve a significant government interest, and left open ample alternative channels of communication. *Id.* at 154. The court also ordered the Postal Service to disseminate the proposed postal bulletin that it had previously submitted to the court by January 15, 2004. *Id.*

In accordance with the December 31, 2003 decision, the Postal Service issued a formal bulletin on January 8, 2004. *See*

---

3. This case was original assigned to United States District Court Judge Richard W. Rob-

erts. It was reassigned to this District Court Judge on August 29, 2013. *See* Dkt. No. 175.

POSTAL BULLETIN 22119 dated January 8, 2004 (hereinafter the "January 2004 Postal Bulletin"). The January 2004 Postal Bulletin was styled as a "reminder" to postmasters of their obligation to enforce the 1998 Regulation's ban on "activities in support of ballot initiatives and public referenda." *Id.* However, the Bulletin clarified that the Regulation should *not* be enforced as to activity on *Grace*-like sidewalks and/or individuals who are simply soliciting (as opposed to collecting) signatures. *Id.*

Plaintiffs appealed the December 31, 2003 decision, and the D.C. Circuit reversed. *Id.* at 1318. The D.C. Circuit concluded that the 1998 Regulation was "unconstitutional" if "applied to a public forum" because the Regulation was not narrowly tailored and it did not permit petitioning anywhere on postal property. *Id.* at 1313; *IRI IV*, 685 F.3d at 1068–69. However, the Court acknowledged that this conclusion did not resolve Plaintiffs' facial challenge because it had not yet been established what percentage of the postal property at issue constitutes public forums. *IRI II*, 417 F.3d at 1312. Therefore, the D.C. Circuit remanded the matter with instructions to determine whether "a substantial number" of postal properties "constitute public forums." *IRI II*, 417 F.3d at 1313 ("If they do, the [1998 Regulation] creates an unacceptably high risk of chilling constitutionally protected solicitation on such properties."). "To guide the district court, [the D.C. Circuit] noted that interior postal sidewalks 'may be hard to categorize' but that *Grace* sidewalks are surely public forums where the regulation may not be enforced." *IRI IV*, 685 F.3d at 1069 (quoting *IRI II*, 417 F.2d at 1313–14).

Significantly, the D.C. Circuit noted that the Postal Service had interpreted the 1998 Regulation to not apply to *Grace* sidewalks, as evidenced by the January 2004 Postal Bulletin. *IRI II*, 417 F.3d at 1316–17. The Court concluded, however, that this did not resolve the problem with respect to postal property resembling *Grace* sidewalks, because no postal patron reading the express language of the 1998 Regulation would know that the Regulation's prohibition on soliciting signatures would not apply to *Grace*-like sidewalks. *Id.* The Court observed that the Postal Bulletin was an internal bulletin (as opposed to published in the Federal Register or the Code of Federal Regulations). "As a consequence, the Postal Bulletin cannot alone temper the [1998 Regulation's] chill of First Amendment rights." *Id.* at 1318. Lastly, the Circuit Court stated that "[o]f course, this issue may be pretermitted if the Postal Service amended the [1998 Regulation] to exclude such [*Grace*] sidewalks from the prohibition against solicitation." *Id.* However, the Court did not issue an order requiring the Postal Service to amend the Regulation.

On December 1, 2005, while the matter was on remand to the district court, the Postal Service amended the 1998 Regulation to state that it "shall not apply to":

> Sidewalks along the street frontage of postal property falling within the property lines of the Postal Service that are not physically distinguishable from adjacent municipal or other public sidewalks, and any paved areas adjacent to such sidewalks that are not physically distinguishable from such sidewalks.

39 C.F.R. § 232.1(h)(1) (2005), 70 Fed. Reg. 72078, at 72078 (Dec. 1, 2005) (hereinafter the "2005 Regulation"). In other words, the 2005 Regulation specifically excluded *Grace*-like sidewalks from the ban. *IRI IV*, 685 F.3d at 1069. The 2005 Regulation also "clarify[ied] that the prohibition against soliciting signatures on postal property refers to the actual collection of

the signatures and not to communication that promotes the signing of petitions...somewhere other than on Postal Service premises." 39 C.F.R. § 232.1(h)(1).

The parties again renewed their motions for summary judgment. Judge Roberts subsequently indicated that the record required more information on the postal property at issue in order for the court to engage in a First Amendment analysis. *IRI III*, 741 F.Supp.2d at 31. Accordingly, the parties conducted a survey of selected postal properties to determine the type and extent of expressive activity that takes place on various postal sidewalks. *Id.* They sent questionnaires to the facility manager at each retail post office in twelve postal districts. *Id.* The questionnaires divided postal sidewalks into *Grace* and non–*Grace* categories and instructed the facility managers to describe the "expressive activity" and frequency of such activity on the sidewalks.

Thereafter, Plaintiffs moved for summary judgment, arguing that the 2005 Regulation is facially unconstitutional because: (1) a substantial number of the non– *Grace* sidewalks are public forums, (2) the 2005 Regulation is not reasonable even if the sidewalks are non-public forums, and (3) the 2005 Regulation is void for vagueness. *Id.* at 32. In addition, Plaintiffs sought to enjoin the Postal Service from applying the 2005 Regulation to *Grace* sidewalks. *Id.* The Postal Service, in turn, moved for summary judgment, arguing that the non–*Grace* sidewalks are not public forums, and that the 2005 Regulation is valid because it is reasonable. *Id.*

By Memorandum Opinion and Order dated September 8, 2010, Judge Roberts granted the Postal Service's motion and denied Plaintiffs' cross-motion. *IRI III*, 741 F.Supp.2d at 41. The court concluded that the 2005 Regulation was not being enforced on *Grace* sidewalks, and thus

Plaintiffs' challenge to the 2005 Regulation with respect to *Grace* sidewalks was moot. *Id.* at 35. With respect to the non–*Grace* sidewalks, the court concluded that Plaintiffs had failed to show that such sidewalks are public forums or that the Regulation is unreasonable or void for vagueness. *Id.* at 35–41. Plaintiffs appealed again. On July 13, 2013, the D.C. Circuit affirmed the district court's decision. *IRI IV*, 685 F.3d at 1066. Plaintiffs' petition for panel rehearing and rehearing en banc was denied on September 10, 2013. Plaintiffs' petition for certiorari was denied on April 15, 2013. Dkt. No. 164, Ex. 1.

On May 15, 2013, Plaintiffs filed the instant motion for an award of attorney's fees under EAJA. The motion was referred to Magistrate Judge Kay for resolution on June 20, 2013. The case was reassigned to this United States District Judge on August 29, 2013. Dkt. No. 174. Pursuant to Local Civil Rule 72.2(c), the Court now turns to Plaintiffs' objections to Magistrate Judge Kay's Report and Recommendation.

### III. LEGAL STANDARD

The Equal Access to Justice Act ("EAJA") provides that a court "shall award to a prevailing party other than the United States fees and other expenses ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). In determining whether a plaintiff qualifies as a "prevailing party" for purposes of EAJA, courts in this Circuit apply the standard articulated by the U.S. Supreme Court in *Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Specifically, courts apply a three-part test: (1) there must be a "court-ordered change in the legal relationship" of

the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief. *Thomas v. National Science Foundation*, 330 F.3d 486, 492–93 (D.C.Cir.2003).

■ In addition, "a plaintiff is not a 'prevailing party' under a fee-shifting statute simply by virtue of having 'acquired a judicial pronouncement that the defendant has violated the [law] unaccompanied by judicial relief.'" *McCrary v. District of Columbia*, 791 F.Supp.2d 191, 198 (D.D.C. 2011) (quoting *Thomas*, 330 F.3d at 488); *see also, Hewitt v. Helms*, 482 U.S. 755, 761, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) (stating that in order to confer "prevailing party" status on a claimant, the judicial pronouncement must require "some action (or cessation of action) by the defendant that the judgment produces—the payment of damages, or specific performances or the termination of some conduct").

■ Therefore, in this Circuit, success on remand is normally required in order to be considered a "prevailing party" within the meaning of EAJA. *New Life Evangelistic Center, Inc. v. Sebelius*, 847 F.Supp.2d 50, 54 (D.D.C.2012). However, a party may be considered a prevailing party regardless of the outcome of remand in two situations. *Id.* First, a remand order may be sufficient where the terms of the remand are such that "a substantive victory will obviously follow." *Id.* (citing *Waterman S.S. Corp. v. Maritime Subsidy Bd.*, 901 F.2d 1119, 1123 (D.C.Cir.1990). Second, a remand order may be sufficient and the end results immaterial where the complaint only sought to correct some procedural error in the agency's decision making process. *Id.* (citing *Envtl. Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1257–58 (D.C.Cir.1993).

## IV. DISCUSSION

### A. Plaintiffs' Motion for Attorney's Fees

In their motion for attorney's fees, Plaintiffs asserted that they are a "prevailing party" for purposes of EAJA because the 2005 Regulation, which now permits soliciting signatures on all postal property and collecting signatures on postal-owned *Grace*-like sidewalks, is markedly different from the 1998 Regulation, which had banned solicitation and collection of signatures on all postal-owned property. Plaintiffs insist that this change was compelled by: (1) Judge Roberts' December 31, 2003 decision ordering the Postal Service to issue the January 2004 Postal Bulletin, and (2) the D.C. Circuit's August 9, 2005 decision in which the Court determined that the 1998 Regulation was unconstitutional as applied to public forums.

The Postal Service contests Plaintiffs' status as a prevailing party under EAJA. It claims that its change in position with respect to the enforcement of the 1998 Regulation (as was ultimately set forth in the January 2004 Postal Bulletin) was voluntary and not compelled by a court order. It further asserts that the 2005 Regulation (*i.e.*, the amendment to the 1998 Regulation) was not mandated by the D.C. Circuit's August 9, 2005 decision. Rather, "[a]t most [P]laintiffs achieved a voluntary change by [the Postal Service] . . . to [ ] amend its regulation to incorporate [ ] two changes which had been previously established in 2002 and published in the [January 2004 Postal Bulletin]." *Id.* at 12–13.

By Report and Recommendation dated October 15, 2013, Magistrate Judge Kay concluded that Plaintiffs are not prevailing parties under EAJA and thus their motion for fees should be denied. The Magistrate Judge reviewed the factual and procedural background of this case, making special note of the two instances on which Plain-

tiffs relied to claim prevailing party status. With respect to the issuance of the January 2004 Postal Bulletin, the Magistrate Judge noted that the December 31, 2003 order directed the Postal Service to send the Postal Bulletin "to all installations if it 'ha[d] not done so already.'" R & R at 10, n. 10 (quoting Dkt. No. 98 at 1). The Magistrate Judge concluded that "[t]he setting of a date certain for the issuance of the Bulletin does not constitute a court-ordered change in the legal relations between the parties where the Defendant had already filed the Bulletin with the Court and agreed to disseminate it." *Id.*

With respect to the 2005 Regulation (*i.e.*, the revisions to the 1998 Regulation), the Magistrate Judge concluded that "the Court of Appeals 'may have impliedly encouraged [the Postal Service] to adopt its revised regulation' but it 'never compelled' [the Postal Service] to do so." *Id.* at 13. *quoting* Def.'s Opp. at 16. The Magistrate Judge went on to emphasize that:

> Nor did the Court of Appeals award Plaintiffs any relief on the merits of their claims. Plaintiffs' argument to the contrary ignores the plain language of the Court of Appeals' opinion, which made it clear that 'it [was] perfectly permissible for the Postal Service to change its enforcement policies or regulations in order to eliminate the basis for a constitutional challenge.'

R&R at 13 (quoting *IRI II*, 417 F.3d at 1317). The Magistrate Judge further noted that the Court of Appeals' conclusion regarding impermissible restrictions on *Grace*-like sidewalks afforded Plaintiffs no relief because the Postal Service had not been enforcing the 1998 Regulation as to *Grace*-like sidewalks since three years prior to the Court of Appeals' decision. R & R at 13–14. Based on the reasoning set forth in *Buckhannon*, the Magistrate Judge concluded "that [the Postal Service's] voluntary change in conduct lacks the necessary 'judicial imprimatur of change' to convey prevailing party status on the Plaintiffs." *Id.* at 16 (quoting *Buckhannon*, 532 U.S. at 605, 121 S.Ct. 1835).

## B. Plaintiffs' Objections to the Report and Recommendation

Plaintiffs charge that Magistrate Judge Kay's conclusion that they are not a prevailing party for purposes of EAJA rests on a misunderstanding of the underlying facts in this case and a misapplication of the law to those facts. Pls.' Objs. at 4, 9. Plaintiffs' argument is twofold. First, they argue that the Magistrate Judge mistakenly understood the December 31, 2003 order as the district court merely "settling . . . a date certain for issuance of the [January 2004 Postal Bulletin]." Pls.' Objs. at 4 (quoting R & R at 10, fn. 10). To the contrary, Plaintiffs argue, the December 31, 2003 order directed the Postal Service to publish the Bulletin. *Id.* at 4–5. In Plaintiffs' view, the Postal Service did not intend to publish the Bulletin unless it was required to do so by the district court. *Id.* Therefore, Plaintiffs argue, the December 31, 2003 order, which resulted in the publication of the Bulletin, constituted a significant court-ordered change in the legal relationship between the parties. *Id.* at 5.

Second, Plaintiffs claim that the Magistrate Judge erred when he concluded that the D.C. Circuit did not compel any action by the Postal Service. Plaintiffs argue that the only reason the district court did not enter a final judgment for Plaintiffs striking down the 1998 Regulation, in whole or in part, is because the Postal Service "beat [the district court] to the punch by adopting [the 2005 Regulation] immediately after the Court of Appeals' mandate was docketed." *Id.* at 8. In Plaintiffs' view, the D.C. Circuit's decision all but awarded them victory:

[the remand] proceedings necessarily would have resulted in the entry of a final judgment for Plaintiffs in [the district court], because the ... remand left [the district court] with only two alternatives: if it found that *Grace* sidewalks constituted a "substantial number" of all Post Office sidewalks, then it was obliged to strike down the entire regulation on its face.... Or, if it found that *Grace* sidewalks constituted less than a substantial number of Post Office sidewalks, then it was obliged to strike down the regulation as applied to *Grace* sidewalks. ...Either way, entry of judgment for Plaintiffs by [the district court] was required.

Pls.' Reply at 6–7. According to Plaintiffs, precedent in this Circuit is clear: "A party who establishes an entitlement to relief on the merits of a claim—as [Plaintiffs] did in this case—is entitled to fees even if the case is remanded to the agency for further action." *Id.* (quoting *Massachusetts Fair Share v. Law Enforcement Assistance Admin.*, 776 F.2d 1066, 1068 (D.C.Cir.1985)).

The Postal Service counters that Magistrate Judge Kay correctly determined that, having failed to ever secure a judgment in their favor or to secure a court order directing the Postal Service to provide any specific relief to them, Plaintiffs are not prevailing parties entitled to fees under EAJA. "At most, early in the litigation [P]laintiffs achieved a voluntary change by [the Postal Service] to not enforce [the 1998 Regulation] on postal-owned property resembling *Grace* sidewalks and to interpret its [R]egulation as a ban on gathering signatures, not a ban on pure solicitation. The only other change [P]laintiffs achieved is that after the Court of Appeals' decision in 2005, [the Postal Service] voluntarily amended its [R]egulation to incorporate these two changes which had been previously established in

2002 and published in the [January 2004] Postal Bulletin." Def.'s Resp. at 18.

■ This Court agrees that Plaintiffs are not a prevailing party for purposes of the EAJA. Plaintiffs argue, without support, that the Postal Service would not have issued the January 2004 Postal Bulletin if Judge Roberts had not "compelled" it to do so. Plaintiffs' argument stands in stark contrast to Judge Roberts' October 4, 2002 order summarizing the Postal Service's representations in open court regarding its "changed" position on the 1998 Regulation. In it, the court states:

The [Postal Service] announced at the September 24, 2002 hearing in open court that it has now changed its articulated position from the one it took early in this litigation to one more favorable to plaintiffs on whether certain alternative channels of communication on exterior postal properties would violate [the 1998 Regulation]. *[The Postal Service] also expressed willingness to issue a bulletin to its postmasters directing them to adhere to this changed position.*

Dkt. No. 87 (emphasis added). This Court has no reason to doubt Judge Robert's representation regarding the Postal Service's "willingness to issue" the Bulletin. Nor is this Court persuaded by Plaintiffs' contention that the fact that the Postal Service did not issue the Bulletin until after Judge Roberts ordered it to do so in the December 31, 2004 order, demonstrates that the Postal Service never intended to voluntarily disseminate the Bulletin. To the contrary, the Postal Service's delay in issuing the Bulletin was caused, in part, by the fact that Judge Roberts granted Plaintiffs the opportunity to comment on the proposed text of the Bulletin as it was submitted by the Service in response to the October 4 order. Indeed, Plaintiffs filed objections to the Bulletin, as proposed, and the Postal Service responded to

Plaintiffs' objections. Dkt. No. 90–91. Under these circumstances, it would have been presumptuous for the Postal Service to disseminate the Bulletin without first receiving direction from Judge Roberts.

Likewise, this Court agrees with the Magistrate Judge's conclusion that the D.C. Circuit's 2005 decision did not compel the Postal Service to amend the 1998 Regulation. Rather, the D.C. Circuit simply held that *if* the 1998 Regulation was applicable to a substantial number of public forums, it would be unconstitutional. The Court already knew that the Postal Service was not applying the Regulation to *Grace*-like sidewalks (*i.e.*, those sidewalks that clearly constitute public forums). The record was clear that the Postal Service had refrained from doing so since at least 2002. However, the question remained whether other exterior postal property (*i.e.* non–*Grace* sidewalks) constituted public forums. The D.C. Circuit remanded the case to the district court in order to make that determination. The district court determined that the non–*Grace* sidewalks did not constitute public forums, and therefore, granted summary judgment in favor of the Postal Service, a decision the D.C. Circuit later affirmed in 2012. Therefore, Plaintiffs did not gain any court-ordered relief from the D.C. Circuits' 2005 decision. In short, the D.C. Circuit determined that the 1998 Regulation would be unconstitutional if applied to public forums. On remand, the district court determined that the Regulation was not being applied to public forums. Accordingly, Plaintiffs were afforded no relief by the 2005 decision.

Nevertheless, Plaintiffs argue that the D.C. Circuit's 2005 decision compelled the Postal Service to amend the 1998 Regulation "because it could see the writing on the wall." This Court disagrees. The Postal Service had already voluntarily ceased applying the Regulation to *Grace*-like sidewalks in 2002. The 2005 Regulation did not change the manner or degree to which the Service enforced the solicitation ban, it simply codified the changes it made in 2002 in order to address the D.C. Circuit's concern that citizens would be unaware of the Postal Service's changed position (due to the fact that the January 2004 Postal Bulletin is an "internal" bulletin addressed only to postmasters). Accordingly, this Court agrees with the Magistrate Judge's conclusion that the 2005 Regulation (*i.e.*, the amendment to the 1998 Regulation) constitutes a voluntary change that lacks the necessary "judicial imprimatur of change" to convey prevailing party status on Plaintiffs. *See, e.g, Buckhannon*, 532 U.S. at 605, 121 S.Ct. 1835 (holding that plaintiff was not a prevailing party because the lawsuit was resolved by virtue of defendant's voluntary action, not "what the court ordered"); *Thomas v. National Science Foundation*, 330 F.3d 486, 492 (D.C.Cir.2003) (holding that the fact that lawsuit brought about a voluntary change in the defendant's conduct, absent court-ordered relief, is not sufficient to establish prevailing party status); *New England Regional Council of Carpenters v. Kinton*, 284 F.3d 9, 30 (1st Cir.2002) (same). [4]

4.  Nor is this Court persuaded by Plaintiffs' reliance on *Massachusetts Fair Share v. Law Enforcement Assistance Admin.*, 776 F.2d 1066, 1068 (D.C.Cir.1985) and *Waterman S.S. Corp. v. Maritime Subsidy Bd.*, 901 F.2d 1119, 1123 (D.C.Cir.1990). These cases simply hold that a party may be considered a prevailing party under EAJA even if the case is on remand "because the terms of remand may be such that a substantive victory will obviously follow." *Waterman*, 901 F.2d at 1123. As discussed above, that was not the case here. The D.C. Circuit's 2005 decision was such that Plaintiffs could, and indeed did, fail to obtain relief on remand. It is for this same reason that Plaintiffs' reliance on *National Rifle Ass'n of America, Inc. v. City of Chicago*, 646 F.3d 992, 993–94 (7th Cir.2011) is misplaced.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' objections to Magistrate Judge Kay's Report and Recommendation are OVERRULED. Plaintiffs are not a prevailing party for purposes of EAJA, and therefore, are not entitled to an award of attorney's fees. Accordingly, the Report and Recommendation is HEREBY AFFIRMED.[5]

---

5. Given the Court's affirmance of the Report and Recommendation, it is not necessary to address Plaintiffs' remaining objections.

